## In re BROOKHOLLOW ASSOCIATES et al., Debtors.

## Appeal of Thomas J. DONNELLEY et al.

### No. 77–1506.

United States Court of Appeals, First Circuit.

Argued March 9, 1978.
Decided May 19, 1978.

John C. Wyman, Boston, Mass., with whom John J. O'Connor, Jr., and Roche, Carens & DeGiaeomo, Boston, Mass., were on brief, for appellants.

William F. Macauley, Boston, Mass., with whom Rene D. Varrin and Tyler, Reynolds & Craig, Boston, Mass., were on brief, for appellee.

Before CAMPBELL and BOWNES, Circuit Judges, PETTINE, Chief Judge.*

PETTINE, Chief District Judge.

Appellants are the two general partners of four limited partnerships which are debtors before the bankruptcy court in Massachusetts. They contend that venue is improper in Massachusetts for the four debtor partnerships, and that the limited partner's petition for a conversion to a voluntary Chapter 12 proceeding was improperly allowed because it was without the general partners' consent. Appellants appeal pursuant to § 24 of the Bankruptcy Act, 11 U.S.C. § 47 (1976), from the district court's affirmance of the bankruptcy court's determinations.

Three of the limited partnerships operate nursing homes which care for approximately 425 persons and employ another 400. The fourth provides management and accounting services to the other three. All four are organized under the laws of Connecticut and do all their business in that state. The two general partners, Charles A. Regulbuto and Thomas J. Donnelley, each own 10 percent of the partnerships; while contributing no capital, they provide management services.

The limited partner, Charles Brennick, contributed all of the capital. He appears to have been the organizing force in establishing the homes and finding the general partners to operate them. His 80 percent interest in the partnerships gives him a controlling 80 percent vote with regard to crucial partnership decisions, including winding-down.

Mr. Brennick appears to be something of an entrepreneur in the nursing home business. At the time the petitions which commenced the instant bankruptcy suit were filed, he was already a bankrupt debtor before the Massachusetts court along with 39 partnerships and corporations in which he was the principle. A Mr. Bartlett had been appointed a Chapter 12 trustee over Brennick's personal estate.

* Of the District of Rhode Island, sitting by designation.

Two of those 39 entities in bankruptcy, MediCo Associates, Inc., and Data Comp, Inc., had provided the four limited partnerships with accounting, computing and management services, including patient placement. MediCo also paid insurance premiums and the salaries of certain employees for the four partnerships. MediCo's comptroller states that he viewed the partnerships as its agents.

On July 14, 1976, MediCo and Data Comp filed involuntary bankruptcy petitions against the four partnerships. The court appointed a receiver to avoid irreparable harm and provided for the joint administration of these partnerships with Brennick's other 39 entities. The next day, Charles Brennick determined, pursuant to his powers under the partnership agreements, to dissolve the partnerships. The general partners appealed from the denial of their motions to dismiss because of improper venue, and to remove the receiver. The partnerships were adjudicated bankrupt by default on January 24, 1977.

At a partnership meeting, on February 14, 1977, Brennick cast his majority vote to authorize the filing of a Chapter 12 petition for a voluntary arrangement. The converter petition seeking a rehabilitation was filed on February 16, 1977, and subsequently granted over the opposition of the general partners. They appealed.

Brennick also made an ex parte application for the appointment of a trustee over the limited partnerships to prevent irreparable harm. The bankruptcy court appointed Brennick's own trustee in bankruptcy, Joseph Bartlett, who is the appellee in this case. The general partners again took an appeal.

Consolidating all appeals, the district court affirmed, in a memorandum and order dated July 27, 1977, C.A. No. 77–1530–S, the decision of the bankruptcy court, except that it remanded the appointment of Bartlett for further hearings to determine whether a conflict of interests existed. Appellants then took this appeal. Having already determined on January 6, 1978, that the conflict of interests question was not ripe for decision, this Court has only two questions to consider: the appropriateness of venue and the validity of the Chapter 12 converter petition.

The appellee asserts that this case can only be understood as a struggle between the general partners who will compel a forced liquidation and the limited partner who will continue to operate the partnerships for the benefit of patients and creditors, the going concern value allegedly being four million dollars. The general partners deny that they prefer a forced liquidation and affirm that they are equally sanguine about their prospects of making the operations viable. Nonetheless, it would appear that disallowing Brennick's petition for an arrangement would lead to liquidation.

Also coloring this controversy is the appellee's repeated assertion that the general partners wasted assets. While the general partners deny any wrong-doing, the bankruptcy judge made a specific finding that the general partners have "wasted partnership assets and acted in bad faith".[1] This finding is not clearly erroneous and the appellants do not vigorously contend otherwise.

## VENUE

The district court found that venue was proper in Massachusetts pursuant to Bankruptcy Rule 116(a)(4) (1976),[2] and that, even if it were not, the bankruptcy court had not

---

1. The bankruptcy court found that approximately $200,000 were unaccountably withdrawn from partnership accounts and deposited in other accounts, without any proper record keeping. Appellants claim that these were, in part, loans, though no interest was ever paid, and were, in part, set aside to pay tax obligations. On this basis, the court found that the general partners had committed waste.

2. Rule 116(a)(4) reads, in part:

a petition commencing a bankruptcy case may be filed by or against an affiliate of the bankrupt in a district where a petition under this title by or against the bankrupt is pending.

abused its discretion by retaining an improperly filed case in the interests of justice and convenience.

Rule 116(a)(4) permits a petition to be filed against an "affiliate" of the bankrupt in a district where a petition by or against the bankrupt is pending. Here the bankrupt, whose petition was already pending before the Massachusetts court, is Charles Brennick. The district court found the four partnerships to be his affiliates within the meaning of Bankruptcy Rule 901.

To the contrary, appellants contend that a limited partnership is not an "affiliate" under Rule 901, which deals largely with corporations and the affiliations between parents and subsidiaries. *See* Bankruptcy Rule 901, Advisory Committee Note.

On the basis of this same Advisory Note, appellee argues that the affiliate provision attempts to give "substantially more liberal scope to the special venue and transfer provisions of Rule 116(a)(4)", and to the authorization for joint administration in Rule 117. Limited partnerships, he argues, should be treated as affiliates under the appropriate circumstances to realize this purpose.[3] This expansive reading might find support in Rule 903 which instructs courts to construe the Rules "to secure the expeditious and economical administration of every bankrupt estate".

■ We need not decide this question. Even if venue were improper under Rule 116(a), the bankruptcy court permissibly relied on Rule 116(b)(2), which provides that, where a petition has been filed in an improper district, a court may retain the case, after notice and hearing, "in the interest of justice and for the convenience of the parties".[4] The decision to retain is committed to the sound discretion of the court. *Bass v. Hutchins,* 417 F.2d 692, 694–96 (5th Cir. 1969); *In re Bankers Trust,* 403 F.2d 16,

21–23 (7th Cir. 1968); *cf. In re Miller,* 172 F.Supp. 208 (D.Kan.1959). In reviewing the exercise of this discretion, we note a general policy of flexibility in consolidation of proceedings. Rule 116(a)(2)(4) and (b) and (c) all look to increasing the flexibility of the venue provisions by allowing for the consolidation of cases which involve persons, partnerships and corporations whose control, ownership and finances are intertwined.

There is, first of all, no hint of the deliberate manipulation of the venue provisions or of harassment or bad faith by the petitioning creditors. *See* Rule 116(b), Advisory Committee Note. Equally important, this case has strong connections to the Massachusetts forum. The limited partner Brennick, who is liable for most of the partnership debts, was already before the Massachusetts court, as were any number of his various businesses. Two of these, MediCo and Data Comp, were petitioning creditors in this suit. These same two had been closely involved in the management of the four partnerships, and it appears that they presently continue that involvement under the approval of the trustee. The joint administration of the estates of these intertwined debtors is an efficient use of judicial resources; it may also enhance the administration of these various interrelated entities to the benefit of their creditors. Finally, besides MediCo and Data Comp, the two other petitioning creditors are also to be found in the Boston area.

To counter these factors which count strongly in favor of Massachusetts venue, the appellants fail to assert any evidence of detriment or great inconvenience except to say that Massachusetts is not Connecticut. This is not enough. Also, the finding of bad faith on the part of the general partners disinclines the Court to sympathize

---

**3.** Appellee also argues that a limited partnership presents the sort of split between ownership and control toward which the definition of "affiliate" is aimed. *Cf. In re Haupt & Co.,* 343 F.2d 726 (2d Cir. 1965) *cert. denied* 382 U.S. 890, 86 S.Ct. 182, 15 L.Ed.2d 148 (1965).

**4.** Rule 116(b)(2) reads, in part:

> If a petition is filed in a wrong district, the court may, after hearing on notice to the petitioner or petitioners and such other persons as it may direct, dismiss the case or, in the interest of justice and for the convenience of the parties, retain the case or transfer it to any other district.

with their suggestion that the Massachusetts venue only serves to further exclude them from their central role as general partners.

The court's retention of the case, to permit the joint administration of the various entities, is convenient for the creditors and the limited partner, and creates no hardship on the general partners. It was not an abuse of discretion.

The claim that appellants were denied the hearing prior to retention, mandated by Rule 116(b), is without merit.

### CHAPTER XII—PETITION

Appellants object to the petition for conversion of the involuntary proceeding into a voluntary one under Chapter 12. Because Bankruptcy Rule 12–8 requires that such a "petition may be filed . . . by all the general partners on behalf of the partnership", they contend that Brennick, as a limited partner, was without power to file such a petition and that the opposition of the two general partners makes the petition a nullity.

■ The first contention is rather easily disposed of and we affirm the conclusion of the bankruptcy and district courts that Brennick is to be treated as a general partner, capable of consenting to a petition, in accordance with § 5(k) of the Bankruptcy Act, 11 U.S.C. § 23(k). That provision provides that a limited partner of an adjudged bankrupt, who is individually liable for any partnership debts, is to be treated as a general partner as to those debts and, if insolvent, is to be entitled to the rights and benefits of the Act. Inasmuch as the bankruptcy court found that Brennick is "individually and personally liable for substantially all of the secured indebtedness of each of the Debtors", Brennick falls within the ambit of that clause. Appellants argue that § 23(k) grants general partnership status only to the limited extent of the debts for which there is personal liability. Here, however, his personal liability and the indebtedness of the partnerships are largely synonymous. At least in this case, Mr. Brennick, who has interests protected by

the Rule, is entitled to the right to petition conferred by Rule 12–8.

More difficult is the absence of present subjective consent by the two general partners to the filing of a Chapter 12 petition. At stake is the language of consent in Rule 12–8, and the voluntary nature of a Chapter 12 arrangement. Counterpointed to these factors are the voluntary nature of a partnership which allows for a prior agreement of rights, and certain important equitable principles.

It is understandable that, to the general partners, Brennick's petition appears more akin to the petition for an involuntary bankruptcy filed by two of Brennick's corporations than to a voluntarily undertaken arrangement. Nonetheless, several factors relied upon by the bankruptcy and district courts lead us to conclude that the petition was properly filed.

■ We first note that the Advisory Committee Note to Rule 12–8 makes clear that consent neither by signature nor presence is required at the filing of a petition. Moreover, the Note cites to *Collier's On Bankruptcy,* which concludes that consent "could be validly expressed either at the time of the filing of the petition, or in the articles of partnership, or in any other manner recognized by applicable state law". *Collier's On Bankruptcy* Vol. 8 ¶ 4.02 at 354 (Ch. XI) (14th ed. 1978); *id.* Vol. 9 ¶ 4.02 at 833 (Ch. XII). This is consistent with the power of partners to adjust their rights by agreement.

The bankruptcy court noted that clauses 23G and 20A of the partnership agreement provided that partnership decisions, including those related to dissolution, were to be made by at least a majority vote at partnership meetings. That Brennick was given an 80 percent voting share by the partnership agreement constituted a decision of the general partners to be bound by his vote in every important matter. As such, the court concluded, the agreement was a prior consent, permitting Brennick to make the important decisions with regard to dissolution; a decision to seek an arrangement is one

such decision. *See Hammond v. Chastain,* 230 Ga. 747, 199 S.E.2d 237, 239 (1973).

The district court's review of the effect of the partnership agreement shows it to be ambiguous. Acknowledging the force of 23G, the district court found that clause 23(C) of the agreement diminished its force, by stating that no agency relationship was established between one partner and another, except as otherwise stated.

Faced with the ambiguity of the partnership agreement, the bankruptcy and district courts relied on equitable considerations. The district court placed special emphasis upon the public interest in continuing operations, under a Chapter 12 arrangement, for the nursing home patients. Creditors are also likely to benefit from the preservation of the going-concern value of the partnerships. Moreover, the district court concluded that the partners' bad faith prevents them from claiming the literal protection of Rule 12–8.

We mention in addition the long tradition in equity of appointing a receiver to protect partnership assets for the benefit of creditors and the other partners, when a court is confronted with a partner's bad faith. *See e. g. Lieberbaum v. Levine,* 54 So.2d 159 (Fla.1951); *Continental National Bank of Boston v. Strauss,* 137 N.Y. 148, 32 N.E. 1066 (1893); Pomeroy's *Equity Jurisprudence* § 1333; Rowley *On Partnership* Vol. 2 (2d ed. 1960) §§ 48.42–.43 at 259–63.[5]

■ In light of the "overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction", *Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966), and the admonition of Rules 903 and 12–62 that the Rules are to be construed to secure a "just, speedy and inexpensive determination", we accept the district court's reliance on equitable principles in concluding that the petition was properly filed. Having consented to be bound by the decision of Brennick, the general partners, who have been found to be in bad faith, may not now avail themselves [6] of the Rule 12–8 unanimity requirement to the possible detriment of patients and creditors. This conclusion is especially apt because their bad faith could equally have resulted in a loss of their general partnership powers in an equitable suit for the appointment of a receiver.

The cases to the contrary, which require a unanimous present consent of all the general partners to a Chapter 12 petition, have not involved the bad faith and the public interest in an arrangement which are here overriding. *See In re Ira Haupt,* 234 F.Supp. 167, 170 (S.D.N.Y.1964), *aff'd in part on other grounds,* 343·F.2d 726 (2d Cir. 1965), *cert. denied,* 382 U.S. 890, 86 S.Ct. 182, 15 L.Ed.2d 148 (1965), *aff'd in part on other grounds,* 348 F.2d 907 (2d Cir. 1965) (per curiam); *In re P H B Associates,* 2 Bankr.Ct. Dec. 1620, 1622 (D.D.C.1976) (bankruptcy judge); *In the Matter of Chili Heights Associates, Debtor,* 2 Bankr.Ct. Dec. 174 (W.D.N.Y.1975) (bankruptcy judge); *cf. In re Hilton Village II Assoc.,* 2 Bankr.Ct. Dec. 645 (W.D.N.Y.1976) (bankruptcy judge).

*Judgment is affirmed.*

---

5. There appears to be nothing in the laws of receivership and partnership in Connecticut, under which the partnership was formed, to lead the general partners to believe that their partnership agreement was not to be governed by these principles. *See* C.G.S.A. §§ 52–509–511 (1976).

6. The appellants claim that an estoppel is impermissible because there is no relationship between their alleged waste and their act of claiming a right under Rule 12–8, which is being estopped. But an estoppel here protects the partnership as a going concern, which is what the waste threatened. Appellants argue that an estoppel requires prior reliance, and that here there was no reliance with regard to whether a Rule 12–8 defense would be asserted. Brennick did rely on the good faith and fiduciary duties owed by the general partners.