**In re AUTUMN PRESS, INC., Debtor.**

**Bankruptcy No. 81–1756–L.**

United States Bankruptcy Court,
D. Massachusetts.

April 28, 1982.

Gerald D. Rosen, Richmond, Rosen, Crosson & Resnek, Boston, Mass., for Autumn Press, Inc.

Mark Berman, Widett, Slater & Goldman, Boston, Mass., for Ronald Dreier.

Hertz N. Henkoff, Barron & Stadfeld, Boston, Mass., for trustee.

Thomas A. Hickey, Barron & Stadfeld, Boston, Mass., trustee.

## MEMORANDUM AND ORDER GRANTING MOTION TO DISMISS

THOMAS W. LAWLESS, Chief Judge.

The Court has before it the motion of Ronald Dreier ("Dreier") to dismiss the Chapter 11 petition of Autumn Press, Inc., ("Autumn Press") on the ground that the debtor's Chapter 11 petition was filed without proper corporate authorization. The relevant facts are not in dispute.

Autumn Press is a corporation incorporated on March 8, 1972, in accordance with the laws of the State of New York with a principal place of business in Massachusetts. At the time of the filing of the bankruptcy petition on September 28, 1981, Autumn Press had fifteen shareholders and its president and sole director was M. Nahum Stiskin ("Stiskin"). As sole director, Stiskin executed a Consent of Director on September 21, 1981 authorizing the filing of Autumn Press' Chapter 11 petition. Pursuant to that Consent, Stiskin, as president, signed and filed the petition. Autumn Press' petition was inaccurate in that it contained the statement that "[P]etitioner is a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts and has a post office address: 1318 Beacon Street, Brookline, Ma. 02146." On November 17, 1981, Dreier filed this motion to dismiss asserting that the Consent of Director executed by Stiskin authorizing the filing of this petition was in violation of New York law and the governing instruments of Autumn Press.

Before Dreier's motion to dismiss could be heard and upon the motion of the United States Trustee, the Court converted the debtor's Chapter 11 proceeding to a proceeding under Chapter 7 due to the absence of a reasonable likelihood of rehabilitation and to prevent continuing loss and diminution of the estate.

■ Other than the requirement that the petition be a "voluntary" act, 11 U.S.C. § 301, the Bankruptcy Code does not establish what the internal requisites are for the initiation of a voluntary corporate bankruptcy proceeding. It is therefore appropriate to apply both the substantive and conflict of law rules of the state in which this Court sits regarding such requirements. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon Co. v. Stentor Mfg. Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *See also Matter of D. H. Overmyer Co., Inc.*, 12 B.R. 777 (Bkrtcy.S.D.N.Y.1981); *Matter of Maplewood Poultry Co.*, 2 B.R. 550 (Bkrtcy.D. Me.1981).

■ Under Massachusetts law, the validity of a corporate act is determined by the governing instruments of the corporation and the law of the state of incorporation. *Wasserman v. National Gypsum Co.*, 335 Mass. 240, 242, 139 N.E.2d 410, 411 (1957). Since Autumn Press is a corporation organized under the laws of New York, and not Massachusetts as stated in debtor's petition, the Court will apply the laws of New York. It was held under the Bankruptcy Act that the filing of a bankruptcy petition seeking a voluntary adjudication was such an act of management as to require approval of the corporation's board of directors. *In re Raljoed Realty Co.*, 277 F.Supp. 225 (S.D.N.Y.1967), *aff'd per curiam sub nom. In re Park Towers Corp.*, 387

F.2d 948 (2nd Cir. 1967). Although the commencement of a Chapter 11 petition under the Bankruptcy Code does not involve a cessation of business as an adjudication did under the Bankruptcy Act, this distinction does not obviate the necessity for the authorization of the Board of Directors for the filing of a Chapter 11 petition. *See In re Al-Wyn Food Distributors*, 8 B.R. 42 (Bkrtcy.N.D.Fla., 1980).

While Stiskin, as the sole director of Autumn Press, authorized the filing of the Chapter 11 petition, Dreier contends that this action was a nullity because the corporate By-Laws [1] and New York law [2] require a minimum of three directors where there are three or more shareholders of a corporation. At the time of filing of this petition it is undisputed that there were fifteen stockholders of Autumn Press.

Although there were at one time three directors of Autumn Press, it is also undisputed that at the time of filing of the Chapter 11 Stiskin was the sole director. Given these facts, Dreier asserts that the debtor's bankruptcy proceeding must be dismissed because a valid Board of Directors never authorized the filing of the Chapter 11 petition. I agree.

■ In order for a resolution of a board of directors to have any binding effect it is necessary that a quorum be present at the meeting at which the board adopted the resolution. Article III § 6 of the By-Laws of Autumn Press and Section 707 of N.Y. Bus.Corp. Law establish that the presence of the "majority of the entire Board" shall constitute a quorum. This provision has been construed as requiring a quorum consisting of "the majority of the *entire* number of authorized directors . . . notwithstanding the existence of vacancies on the board." *Avien, Inc. v. Weiss*, 269 N.Y.S.2d 836, 838, 50 Misc.2d 127 (1966). Since there were three authorized directors of Autumn Press, there was no quorum present at the meeting at which Stiskin adopted the resolution directing the filing of the Chapter 11 petition. The Chapter 11 petition was filed without the consent of the Board of Directors of Autumn Press and therefore must be dismissed. *See In re Raljoed Realty Co., supra; In re Jefferson Casket Co.*, 182 F. 689 (N.D.N.Y.1910). Until at least one of the vacant directorships was filled and a quorum established, it was impossible for Stiskin, unilaterally and as the sole director, to authorize the filing of this Bankruptcy petition.[3]

The trustee contends that Dreier lacks standing to bring this motion to dismiss. Dreier is both a creditor and stockholder of Autumn Press. As a stockholder he owns and controls ten percent of the outstanding stock of Autumn Press. Dreier is also a creditor of Autumn Press having obtained an ex parte attachment on trustee process against the corporation's bank accounts at the First National Bank of Boston in the amount of $24,004.27 on July 23, 1981.

In support of his standing argument, the trustee cites cases holding that allegations centering on a debtor's board of directors' power or authority may not be raised by creditors contesting the filing of a voluntary petition. *See e.g. Matter of Verrazza-*

1. Article III, Section 1(a) of the By laws of Autumn Press provides that:

The number of the directors of the Corporation shall be Three (3), unless and until otherwise determined by vote of a majority of the entire Board of Directors. The number of Directors shall not be less than three, unless all of the outstanding shares are owned beneficiary and of record by less than three shareholders, in which event the number of directors shall not be less than the number of shareholders.

2. N.Y.Bus.Corp. Law § 702(a) (McKinney's Consolidated Laws, Book 6, 1981) provides, in relevant part, that "[t]he number of directors constituting the entire board shall not be less than three, except that where all the shares of a corporation are owned beneficially and of record by less than three shareholders . . . ."

3. Nor does this holding result in corporate paralysis where directors are removed, resign or die during a term of office. N.Y.Bus.Corp. Law § 705 and Section 8 of Autumn Press' By Laws specifically provide that the majority of directors then in office, although less than a quorum, can elect new directors to serve for the unexpired portion of the old directors' term of office. Presumably Stiskin did not do so because the terms of the vacant directorships had expired. In such a case the shareholders would have to elect the directors to fill the vacancies on the Board.

no Towers, Inc., 10 B.R. 387, 391 (Bkrtcy.E. D.N.Y.1981); In re Guanacevi Tunnel Co., 201 F. 316, 318 (2d Cir. 1912); In re E. T. Russell Co., 291 F. 809, 818 (D.Mass.1923).

■ However, as a stock holder, Dreier has standing to contest the filing of this petition on the ground of lack of corporate volition. See In re Fox West Coast Theatres, 25 F.Supp. 250 (D.Cal.1936) aff'd 88 F.2d 212 (9th Cir. 1937), cert. den. 301 U.S. 710, 57 S.Ct. 944, 81 L.Ed. 1363 (1936) reh. den. 302 U.S. 772, 58 S.Ct. 7, 82 L.Ed. 598 (1937). Dreier's creditor status and the fact that he may benefit monetarily from a dismissal[4] should not automatically abrogate his standing as a stockholder to contest an invalid corporate act.

The Court is cognizant of the potential detriment that dismissal may have on the creditors of a corporation, who in reliance on the voluntary proceeding initiated by the corporate debtor, abstained from filing an involuntary proceeding which could have avoided certain transfers which otherwise would be preferential if the voluntary proceeding was not dismissed. The Court can conceive of circumstances where dismissal of a bankruptcy proceeding, for non-compliance with corporate by laws or state law upon the motion of a stockholder who holds what otherwise might be a preferential transfer, would be unjustified in both law and equity.

■ However such circumstances are not present in this case. Notice of the motion to dismiss was served upon all creditors of Autumn Press and there was no indication that an involuntary proceeding was contemplated by these creditors. More important-ly, there is no allegation or even suggestion of fraud or collusion in the execution and/or filing of this defective petition. In the absence of such extenuating circumstances, the standing of a stockholder/creditor to question the volition behind the corporate decision to seek protection under the Bankruptcy Code should be upheld.

■ While the purported Board of Director Consent for the bankruptcy filing was an invalid resolution, the trustee asserts that consents[5] executed by three of the fifteen Autumn Press stockholders ratified Stiskin's actions. Even assuming that filing of the petition was not void but voidable and thus capable of ratification by the shareholders,[6] N.Y.Bus.Corp. Law § 615 (McKinney's Consolidated Laws, Book 6) provides, in part:

Written consent of shareholders, subscribers or incorporators without a meeting

(a) Whenever under this chapter shareholders are required or permitted to take any action by vote, such action may be taken without a meeting on written consent, setting forth the action so taken, signed by the holders of all outstanding shares entitled to vote thereon. This paragraph shall not be construed to alter or modify the provisions of any section or any provision in a certificate of incorporation not inconsistent with this chapter under which the written consent of the holders of less than all outstanding shares is sufficient for corporate action.

(b) Written consent thus given by the holders of all outstanding shares entitled to vote shall have the same effect as a

---

4. Upon dismissal, Dreier's attachment will no longer be subject to avoidance under 11 U.S.C. § 547(b)(4)(A) because it would be outside the 90 day period if Autumn Press were to refile. However, upon refiling, his attachment may be subject to avoidance under § 547(b)(4)(B) if Dreier is found to be an 'insider'.

5. Consents adopting the following resolutions were executed without a meeting of stockholders in early February, 1982:

To waive all requirements for giving notice to the shareholders of Autumn Press, Inc. of the meeting regarding the items voted upon herein.

That the date of the votes hereunder is January 19, 1982 to be considered effective as of September 28, 1981.

To ratify, confirm, adopt and approve the action of the president of Autumn Press, Inc. to file on behalf of the Corporation with the United States Bankruptcy Court for the District of Massachusetts, a voluntary Petition pursuant to Chapter 11 of title 11 of the United States Code on September 28, 1981.

That the within consent may be executed in counterpart by individual stockholders.

6. A result I do not reach at this time given the non-compliance with N.Y. law in obtaining the ratification.

unanimous vote of shareholders and any certificate with respect to the authorization or taking of any such action which is to be delivered to the department of state shall recite that the authorization was by unanimous written consent. (emphasis added).

The governing instruments of Autumn Press do not alter these provisions. Since there was no meeting of stockholders, no notice of such meeting and no unanimous consent of the stockholders, there has been no ratification.

Autumn Press has not complied with the law of the place of its incorporation in filing this petition. The statutory requirement of three directors where there are three or more shareholders presumably is to protect those stockholders from the unilateral actions of a single person who purports to act as a Board of Directors. This protection was not afforded and the bankruptcy proceeding of Autumn Press will be dismissed in accordance with the following Order.