### In Re MONTEREY EQUITIES–HILL-SIDE, a California limited partnership, Debtor.

**Bankruptcy No. 587–00520–R.**

United States Bankruptcy Court, N.D. California.

April 6, 1987.

Seymour J. Abrahams, San Jose, Cal., for Charles Duck, State Court Receiver.

Eugene K. Yamamoto, Oakland, Cal., for Monterey Equities, moving party and general partner.

Marilyn Morgan, San Jose, Cal., for Ellison Industries.

Charles Wassell, Walnut Creek, for the following limited partners: Foubrieank Associates, Edward T. Anderson, Ann Bingham, Bruce A. Hyman, Jill W. Hyman, and Austin Morris, individually and on behalf of all others similarly situated.

## MEMORANDUM OPINION

ELIZABETH L. PERRIS, Bankruptcy Judge.

This case raises the issue whether a receiver appointed by a state court to manage and control a limited partnership may commence a case under Chapter 11 (11 U.S.C. § 101 et seq.) for the partnership without the consent of the general partner. As more fully discussed below, the alleged general partner's motion to dismiss will be denied because this Court finds that the receiver may commence such a case, but the filing must be treated as an involuntary petition pursuant to the provisions of § 303(b)(3).[1]

### FACTUAL AND PROCEDURAL BACKGROUND

Monterey Equities-Hillside ("Debtor") is a California limited partnership whose sole asset is an apartment complex located in San Antonio, Texas. When the Debtor commenced operations, Monterey Equities ("ME"), a California partnership, was the sole general partner in Debtor. In addition, thirty-four limited partners owned an interest in the Debtor. Fidelity Equities Corporation-Monterey ("FEC–M"), a Delaware corporation, and Cunningham Chappel Associates ("Cunningham") were the general partners in ME. In 1986, Cunningham assigned its interest in ME to either Fidelity Equities Corp., a Delaware corporation, or Radnor Services Corporation ("Radnor").[2] Although FEC–M consented

---

1. All statutory citations are to the Bankruptcy Code, 11 U.S.C. § 101 et seq. (West.Supp.1986) unless otherwise designated. The matter before the Court is a core proceeding. 28 U.S.C. § 157(b)(2)(A).

2. It is unclear from the pleadings whether FEC or Radnor became the general partner which replaced Cunningham. The receiver's Memorandum of Points and Authorities, (Pg. 3), filed

February 17, 1987, indicates that Cunningham withdrew from the partnership and FEC and FEC–M formed a new partnership which operated under the name ME. The Declaration of Richard Kling in support of the motion to dismiss filed on or about February 26, 1987 indicates that Cunningham assigned its partnership interest in ME to Radnor. Since the Court need not resolve the question of who became the substitute partner in ME and the method by

to the assignment, the limited partners did not.

The Debtor owes Ray Ellison Industries, Inc. ("Ellison") approximately $2,780,600. The debt is secured by a lien on the Debtor's apartment complex. In January, 1987, Ellison commenced foreclosure proceedings. When ME advised the limited partners about the foreclosure, it informed them that it did not intend to take any action to prevent the foreclosure sale scheduled for February 3, 1987.

On January 28, 1987, five of the limited partners commenced an action in the Superior Court of the State of California for the County of Santa Clara against the Debtor, FEC, FEC–M and ME. The same day, the Plaintiff limited partners obtained an ex parte Order appointing Charles Duck, Sr. as receiver. The Court authorized Mr. Duck to "take over management and control" of Debtor and,

> "In furtherance of his duty to preserve, protect and defend the property of the Limited Partnership and its limited partners, the receiver may file a petition for reorganization of Monterey Equities-Hillside, a California limited partnership, under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 et seq." Paragraph 6 of January 28, 1987 Ex Parte Order Appointing Receiver.

On January 30, 1987, Charles Duck Jr., acting as the authorized agent of the receiver, filed a voluntary petition for the Debtor under Chapter 11. Charles Duck, Sr., the receiver, later signed and filed an amended petition.

On February 2, 1987, ME filed the motion to dismiss which is before the Court. ME's major contention is that a voluntary partnership bankruptcy may only be commenced with the consent of all the general partners and such consent is lacking in this case. In the alternative, ME argues that the Court should dismiss the case because venue is improper. ME claims that venue should be in the District in Texas where the apartment complex is located.

which the substitution occurred in order to resolve the pending motion, the Court will refer

The receiver responds by arguing that a receiver may commence a partnership bankruptcy if authorized to do so by the state court which appointed him. He further argues that the Debtor does not have a general partner because the substitution of FEC/Radnor for Cunningham caused the dissolution of ME under California law. The reconstituted ME ("new ME") could not be the Debtor's general partner without the consent of the limited partners, which new ME never obtained. He responds to the venue issue by arguing that venue is proper and, even if it is not proper, transfer, not dismissal, is the appropriate remedy.

On February 25, 1987, the Superior Court confirmed the appointment of the receiver after hearing argument from ME's counsel.

## ISSUES

1. Whether a state court receiver appointed to take control of a partnership's assets may file a bankruptcy petition for the partnership without the general partner's consent?

2. Whether venue is proper?

3. If venue is improper, is dismissal the appropriate remedy?

4. Whether abstention from the case under § 305 is appropriate?

5. Whether the signing of the petition by the receiver's agent, rather than the receiver, is grounds for dismissal?

## LEGAL ANALYSIS

1. Authority of Receiver to File Petition.

a. Voluntary Petition.

Federal Rule of Bankruptcy Procedure 1004(a) states that a general partner may commence a voluntary bankruptcy for the partnership if all the general partners consent. In this case, ME may be the general

to the substitute partner in ME as FEC/Radnor.

partner in the Debtor[3], and ME has not consented to the bankruptcy. Thus, even if the receiver is considered a general partner for purposes of B.R. 1004(a), he may not commence a voluntary case on behalf of the Debtor.

### b. Involuntary Petition.

 A bankruptcy petition for a partnership or other artificial entity may be filed by those who, under state law, have the authority to manage the entity. *See Price v. Gurney,* 324 U.S. 100, 104, 65 S.Ct. 513, 515, 89 L.Ed. 776 (1945)[4]; *In re Crescent Beach Inn, Inc.,* 22 B.R. 155 (Bankr.ME 1982); *In re Hawaii Times Limited,* 53 B.R. 560 (Bankr.HA 1985).

Since the state court authorized the receiver to manage the partnership, he also has the authority to commence a bankruptcy case. Because the general partner does not consent, however, he must commence the case as an involuntary case. § 303(b)(3)(A)[5].

ME's argument that the Bankruptcy Code and Rules mandate that only the general partners may file a partnership bankruptcy case is not well taken. Bankruptcy Rule 1004(a) states that a general partner may commence a voluntary petition if all the general partners consent. It does not preclude the filing of an involuntary petition by a state court-appointed receiver who has been expressly authorized to file a bankruptcy petition for the partnership.

Further, none of the cases cited by ME hold that a state court cannot authorize a receiver to file a bankruptcy, although *In re Prudence Co.,* 79 F.2d 77 (2d Cir.1935) suggests in dictum that such a filing would be inappropriate because it would result in termination of the receivership.[6] Rather, several of the cases cited by ME hold that appointment of a receiver will not terminate the authority of the Board of Directors of a corporation to avail itself of the remedies created by the Bankruptcy Code. *Central Mortgage & Trust, Inc. v. State of Texas,* 50 B.R. 1010 (S.D.TEX. 1985); *In re S & S Liquor Mart, Inc.,* 52 B.R. 226 (Bankr.R.I.1985); *In re Prudence, supra; Cash Currency Exchange, Inc. v. Shine,* 762 F.2d 542 (7th Cir.1985). ME's citation to the case of *In re Dalton Trust No. 35188, supra,* is likewise unpersuasive. *Dalton* did not deal with a situation where a receiver had been appointed.

Thus, the Court concludes that the receiver may properly commence an involuntary petition against the partnership.

### 2. Proper Venue.

28 U.S.C. § 1408 provides:

Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district—

**3.** As discussed in footnote 2, the receiver contends that the substitution of FEC/Radnor for Cunningham caused the dissolution of ME, which resulted in the Debtor not having a general partner. ME disputes this contention. The receiver seemed to concede in his letter to the Court dated February 27, 1987 that ME may be correct that it is still the general partner of the Debtor.

**4.** *Price v. Gurney,* Id., construed the Bankruptcy Act of 1898 rather than the Bankruptcy Reform Act of 1978 ("the Code"). The Code did not materially change the Act provisions dealing with what authority must be obtained before an artificial entity can file a bankruptcy case. *See* 1 *Collier Practice Guide,* ¶ 5.03.

**5.** ME cites the case of *In re Dalton Lodge Trust No. 35188,* 22 B.R. 918 (Bankr.N.D.Ill.1982) in support of its contention that this case should be dismissed because the receiver filed as a voluntary case, rather than an involuntary case.

Numerous facts present in the *Dalton* case, which are not present in this case, caused the Court to conclude that the case was filed in bad faith and should be dismissed rather than treated as an involuntary. The receiver in this case acted in good faith. His failure to promptly obtain and serve summons resulted from a legitimate belief that the Debtor did not have a general partner, and even if it did, that the receiver could file the case without its consent. The failure to promptly obtain and serve a summons and to treat the initial petition as an involuntary petition is not a material procedural defect which justifies dismissal of the case.

**6.** *In re Prudence, supra,* was decided long before Congress enacted the Code. Section 543(d) of the Code permits the Bankruptcy Court to excuse a receiver from his obligation to turnover property.

(1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; ...

■ The venue criteria most readily applied to partnerships are "principal place of business" and "location of principal assets". There is no dispute that the Debtor's principal assets are located in Texas. It appears, however, that the Debtor's principal place of business is in the Northern District of California. The partnership agreement states that the principal place of business is in Gilroy, California.[7] Thus, it appears that there is a proper factual basis for finding that venue in this district is proper.

## 3. Dismissal as a Remedy for Improper Venue.

■ Even if venue were not proper, transfer rather than dismissal would be the appropriate remedy. As pointed out in *Collier on Bankruptcy:*

> Section 1412, which provides that:
>
> "A district court may transfer a case ... under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties," seems to fall between the standards and the authority granted a court which appertained under the 1898 Bankruptcy Act and those which applied under the Bankruptcy Reform Act of 1978. Under the 1978 statute, 28 U.S.C. § 1477 provided that the bankruptcy court could either transfer or retain but could not dismiss a case which had been filed in an improper

venue. Former Bankruptcy Rule 116(b)(2) gave the bankruptcy court the power to change venue, dismiss the case, or retain the case.

> Section 1412 merely says that a district court "may" transfer a case to another district. It does not say it must transfer the case, nor does it say that if it determines not to transfer the case, it must dismiss the case. Superseded section 1477(a) provided that the bankruptcy court in which a case had been improperly filed could retain or transfer the case. It was thought by most courts that the option to dismiss a case was not present. By like construction, it would seem that under section 1412, the court may transfer, but not dismiss a case. The option to retain is open to question, the statute is silent. The sanction of dismissal is permitted when Congress says it is permitted, as Congress did in 28 U.S.C. § 1406(a). Such a construction is to be commended because of the significant impact that dismissing a case has upon third parties. Dismissal may result in preference recoveries being lost. It may result in a valuable asset being lost to foreclosure. These and other consequences should lead to an interpretation of Section 1412 which precludes the power to dismiss. 1 *Collier on Bankruptcy,* ¶ 3.02[d][ii].

The case of *In re Brookhollow Associates,* 575 F.2d 1003 (1st Cir.1978) upon which ME relies in arguing that improper venue is grounds for dismissal, was decided under the Bankruptcy Act and involved Fed.R.Bankr.P. 116, both of which have been superceded. For the reasons discussed by *Collier,* cases allowing dismissal pursuant to Rule 116 are no longer good law.

## 4. Abstention.

■ ME argues that a case filed for the sole purpose of frustrating a foreclosure should be dismissed. In support of its argument, ME cites *In re Fast Food Proper-*

---

7. Monterey Equities-Hillside, Amended and Restated Certificate and Agreement of Limited Partnership, ¶ 1.3.

754

*ties, Ltd.*, 5 B.R. 539 (Bankr.C.D.CA.1980) a case in which the Court dismissed a Chapter 11 filed solely to prevent foreclosure. The Court relied upon Section 305 [8] which allows the Court to abstain if the interests of the creditors and the Debtor would be better served by dismissal.

This Court finds that ME has failed to demonstrate that abstention would be in the best interests of the creditors and the Debtor.[9] If the Court abstains, the foreclosure sale will proceed. Thereafter, the partnership will be devoid of assets. Although ME's counsel claims that the general partners will pay all the creditors except the secured creditor, ME did not introduce any evidence that the general partners have the ability or the willingness to make such payment. The Debtor consists of the general partner and the limited partners. The limited partners will lose their right to whatever equity may exist in the partnership if its sole asset is sold at a foreclosure sale for less than the fair market value.

5. Signing of the Petition.

 ME contends that the case should be dismissed because Charles Duck, Jr. did not comply with Bankruptcy Rule 9010(c) which requires that his authority to act be evidenced by a signed and acknowledged form conforming substantially to Official Form No. 17 or 18. The receiver argues that Official Form No. 4 indicates that an agent can file a partnership bankruptcy without filing a power of attorney. The receiver further argues that any defect has been cured by the filing of an amended petition signed by the receiver.

The Court agrees with the receiver that the filing of the amended petition has cured any defect. Dismissal is not an appropriate sanction for failure to comply with Rule 9010(c) when the defect is promptly cured.

## CONCLUSION

The Court notes that ME's apparent failure to give proper notice of its motion to dismiss is mooted by the rulings herein. Based on the above discussion, the Court will enter an Order denying ME's motion to dismiss. The case must proceed, however, as an involuntary case because the general partner did not consent to the filing. Therefore, counsel for the receiver will be ordered to file a complaint and take the steps necessary to cause a summons to be issued and served and a trial date set if the receiver desires to proceed with the case.

This Memorandum shall constitute Findings and Conclusions under B.R. 7052.

---

**8.** The pertinent part of § 305 provides:

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

(1) the interests of creditors and the debtor would be better served by such dismissal or suspension; ...

**9.** Local Rule 700–3(a) of the United States Bankruptcy Court for the Northern District of California provides that the bankruptcy judge shall issue a proposed order and a statement of the reasons for the judge's decision on a request for abstention under § 305. The pertinent portions of this Memorandum Opinion constitute the undersigned's statement of the reasons for denying the abstention request.