**In re STAVOLA/MANSON ELECTRIC CO., INC., Debtor.**

**Bankruptcy No. 5–88–00621.**

United States Bankruptcy Court, D. Connecticut.

Dec. 9, 1988.

James Berman, Zeisler & Zeisler, P.C., Bridgeport, Conn., for Anca Staceseu.

David W. Fitzpatrick, Trager & Trager, P.C., Fairfield, Conn., for Frederick Paoletti.

Byron P. Yost, Irve J. Goldman, Evans & Baldwin, P.C., Bridgeport, Conn., for debtor.

## MEMORANDUM AND DECISION ON MOTION TO DISMISS

ALAN H.W. SHIFF, Bankruptcy Judge.

Anca Staceseu, a 50% shareholder of the debtor, moves to dismiss this chapter 11 case because it was filed without corporate authority. For the reasons that follow, the motion is granted.

### I.

The debtor was incorporated in 1985 under the laws of Connecticut to engage in the electrical subcontracting business. David Manson is a 50% shareholder of the debtor, as well as its president and one of its two directors. Jay Stavola is the other director. On April 19, 1988, all shareholders and directors entered into a "Joint Unanimous Consent" (Agreement) to "wind up" the affairs of and dissolve the corporation. The Agreement authorized Manson, as president of the corporation, to file a certificate of dissolution with the Secretary of the State; give notice to all creditors of the filing of the certificate; pay wages, taxes, and benefits; attempt to pay certain debts on which shareholders and directors might be personally liable; deposit moneys received by the corporation into specified bank accounts; and provide an accounting of any action taken. On July 25, 1988, Manson, in his capacity as president, filed a voluntary petition under chapter 11 of the Bankruptcy Code. It is undisputed that there was no formal board of directors meeting to discuss or authorize Manson to file the petition, and Stavola did not ex-

pressly consent to the commencement of this case. On August 8, 1988, Staceseu filed the instant motion.

The debtor contends that the Agreement provided Manson with sufficient authority to file the petition. The debtor's counsel also argues that he could not find any state or federal statute delineating who has authority to file a petition, *see Debtor's Pretrial Memorandum of Law at 10*, but that even if Manson needed and did not have authority, the case should not be dismissed because the petition was ratified by Stavola's inaction and, in any event, three creditors are prepared to file an involuntary petition.[1] Finally, the debtor contends that the petition should not be dismissed because the filing was an ultra vires act, and dismissal would harm creditors.

### II

(a) *The Agreement*

■ The debtor contended at oral argument that the Agreement which authorized Manson to wind up and dissolve the corporation also permitted him to file a chapter 11 petition. There is no merit to that argument. The Agreement provided Manson with authority to perform a limited number of specific acts on behalf of the corporation. The authority to file a petition was not specifically included and may not be derived by implication from any of the specifically authorized acts. There is a difference between winding up and dissolving the corporation and filing a bankruptcy petition on its behalf. The debtor's counsel admitted this in its pretrial memorandum, stating that "Chapter 11 is not akin to dissolution of a corporation." *Debtor's Pretrial Memorandum of Law at 10*.

■ Moreover, even if the Agreement may be read to grant Manson general authority to manage the daily affairs of the corporation as the debtor argues, the logic

---

1. The debtor submitted with its pretrial memorandum of law the written statements of three creditors in opposition to the motion to dismiss, stating that they would join in an involuntary petition against the debtor if this motion is granted. An objection to the debtor's offer to have those statements admitted into evidence was sustained, and the debtor produced only one of these creditors at the trial.

that from this the more specific authority to file a bankruptcy petition may be implied is flawed. It is well established that the president of a corporation has no general power to file a petition because such an act goes beyond the daily management of corporate affairs; it is a specific act requiring specific authorization. *See In re Moni-Stat, Inc.,* 84 B.R. 756, 757 (Bankr.D.Kans. 1988); *In re Beck Rumbaugh Assoc., Inc.,* 49 B.R. 920, 921 (Bankr.E.D.Pa.1985); *In re Penny Saver, Inc.,* 15 B.R. 252, 253 (Bankr.E.D.Pa.1981); *In re Al–Wyn Food Distributors, Inc.,* 8 B.R. 42, 43 (Bankr.M. D.Fla.1980).

### (b) *Authority to File a Petition*

■ The debtor's counsel claims that he "could find no state or federal statute that delineated who has authority to file a petition for reorganization under Chapter 11 of the Bankruptcy Code." *Debtor's Pretrial Memorandum of Law at 10.* There is, however, ample case authority including a decision cited for other reasons by debtor's counsel (*see infra In re Autumn Press, Inc.*), which should have guided him to the applicable statutes. In *Price v. Gurney,* 324 U.S. 100, 104, 65 S.Ct. 513, 515, 89 L.Ed. 776 (1945), the Supreme Court held that "[T]he initiation of the [bankruptcy] proceedings, like the run of the corporate activities, is left to the corporation itself, *i.e.* to those who have the power of management." The determination of who has the power of management is governed by state law. *See id. See also In re Monterey Equities–Hillside,* 73 B.R. 749, 752 (Bankr.N.D.Cal.1987); *In re Hawaii Times Ltd.,* 53 B.R. 560, 561 (Bankr.D. Haw.1985); *In re Crescent Beach Inn, Inc.,* 22 B.R. 155, 157 (Bankr.D.Maine 1982); *In re Autumn Press, Inc.,* 20 B.R. 60, 61 (Bankr.D.Mass.1982).

The identity of those who have the power of management under Connecticut law, which is applicable in this case, is provided by § 33–313(a) of the Connecticut General Statutes: "Subject to any provisions pertaining thereto contained in the certificate of incorporation, the business, property and affairs of a corporation shall be managed by or under the direction of its board of directors." Conn.Gen.Stat.Ann. § 33–313(a) (West 1987). Connecticut law is equally clear regarding the requirements for board action. Section 33–316(b) provides a definition of quorum: "A majority of the number of directorships at the time shall constitute a quorum for the transaction of business unless the bylaws specify a greater quorum or a bylaw adopted by shareholders specifies a lesser quorum...." Conn.Gen.Stat.Ann. § 33–316(b) (West 1987). Section 33–316(c) states that "[t]he act of a majority of directors present at a meeting at which a quorum is present at the time of the act shall be the act of the board of directors, unless the act of a greater number is required by the bylaws or this chapter." Conn.Gen.Stat.Ann. § 33–316(c) (West 1987). The debtor points to no provision in the debtor's certificate of incorporation which permits the president to file a bankruptcy petition. Nor was any reference made to a bylaw which reduced the number of directors necessary to constitute a quorum. It is therefore apparent that there was no board of directors meeting and Manson lacked authority as president or as one of two directors to file the petition in this case.

### (c) *Ratification*

■ The debtor's counsel, citing *New Haven Radio, Inc. v. Meister (In re Martin–Trigona),* 760 F.2d 1334 (2d Cir.1985),[2] contends that "regardless of David Manson's authority to file a voluntary petition for Stavola/Manson, that act has been ratified by Jay Stavola's acquiescence and silence." *Debtor's Pretrial Memorandum of Law at 13.* In that case, the court of appeals found that where the sole shareholder and principal in a corporation did not object to the filing of a petition for over

---

**2.** Debtor's counsel also cited *Rudebeck v. Sanderson,* 227 F. 575 (9th Cir.1915), where the court of appeals found that a shareholder should not be allowed to move to dismiss a petition sixteen months after it was filed. Apart from the fact that this possibly less stringent standard is not authoritative in this circuit in light of *In re Martin–Trigona, supra,* it is apparent that a period of time comparable to sixteen months has not passed.

three years, and in fact participated in the proceedings, he acquiesced in and ratified the filing. *In re Martin–Trigona, supra,* 760 F.2d at 1341. In this case, Stavola did not participate in any way in the proceedings until he testified in support of Staceseu's motion to dismiss. This testimony came approximately three months after the petition was filed, a period of time clearly not comparable to the three year period present in *Martin–Trigona.* There has been no showing of ratification.

### (d) *Potential Involuntary Petition*

 The debtor argues that even if Manson did not have authority to file the petition, the case should not be dismissed because the requisite number of creditors are available to commence an involuntary case. In support of that contention, the debtor cites *In re Monterey Equities–Hillside, supra,* 73 B.R. 749, in which the court found that a state court appointed receiver could not file a voluntary petition on behalf of a partnership without the consent of a general partner under Bankruptcy Rule 1004,[3] but could commence an involuntary petition. Rather than dismiss the case, the court decided to treat it as though it had been commenced by an involuntary petition. I decline to follow *Monterey.* To do so in the context of this case would validate an improperly filed petition on the strength of an argument, disputed by Staceseu, that the case could be properly commenced by another procedure. If the requisite support for an involuntary petition exists, it should be filed. Parties should not be allowed to bootstrap their way into an involuntary case through an improperly filed voluntary petition.

The debtor also cites *In re Autumn Press, supra,* 20 B.R. 60. In addressing the standing of a shareholder, who was also a creditor, to challenge the filing of a petition, the court stated that it was

> cognizant of the potential detriment that dismissal may have on the creditors of a corporation, who in reliance on the voluntary proceeding initiated by the corpo-

rate debtor, abstained from filing an involuntary proceeding which could have avoided certain transfers which otherwise would be preferential if the voluntary proceeding was not dismissed. The Court can conceive of circumstances where dismissal of a bankruptcy proceeding, for non-compliance with corporate by laws or state law upon the motion of a stockholder who holds what otherwise might be a preferential transfer, would be unjustified in both law and equity.

> However such circumstances are not present in this case. Notice of the motion to dismiss was served upon all creditors of Autumn Press and there was no indication that an involuntary proceeding was contemplated by these creditors.

*Id.* at 63. Thus, the suggested hypothetical included not only the presence of three creditors willing to file an involuntary petition, but also the facts that the creditor moving for dismissal was the holder of a potentially avoidable preferential transfer and that if the case were dismissed, the estate created by the filing of a subsequent involuntary petition would not have the benefit of the avoiding power. Here, as noted, the claim that there are three such creditors is disputed. Moreover, there is no evidence whatsoever of the other elements of the *Autumn Press* hypothetical. But more to the point, *Autumn Press* holds that the validity of a petition is determined by state law and the governing corporate instruments, and that in the absence of proper board of directors authorization, a petition is improperly filed and should be dismissed. *Id.* at 61–62. This holding is directly contrary to the position which the debtor asks this court to take.

### (e) *Ultra Vires Act*

 The debtor argues that § 33–292 of the Connecticut General Statutes, which provides the procedure to be followed in the event of an ultra vires act *by a corporation*, supports its opposition to the motion to dismiss. Section 33–292 is not applicable in this case. No action *by the corporation* is being attacked. The debtor clear-

---

**3.** Bankruptcy Rule 1004(a) provides that "[a] voluntary petition may be filed on behalf of the partnership by one or more general partners if all general partners consent to the petition."

ly had the power to file a bankruptcy petition. The issue is not whether the debtor could file, but whether Manson had that authority.

### III.

The Agreement does not authorize the debtor's president to file a bankruptcy petition; the debtor has not complied with applicable law in filing its petition; there has been no ratification by Stavola; this court will not treat this as though it had been commenced by an involuntary petition; and the ultra vires statute relied upon by the debtor is inapplicable. Staceseu's motion to dismiss is granted, and IT IS SO ORDERED.