## In re MILESTONE EDUCATIONAL INSTITUTE, INC., Debtor.

### Bankruptcy No. 93–20747–JNF.

United States Bankruptcy Court, D. Massachusetts.

May 25, 1994.

---

Nina M. Parker, Boston, MA, for debtor.

John J. Monaghan, Boston, MA, for movant Alan Milton.

Thomas J. Raftery, Boston, MA, for state court receiver for Milestone Educational Institute, Inc.

### MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

## I. INTRODUCTION

The matter before the Court is the Motion to Dismiss, or in the Alternative, for Relief from Stay filed by Alan Milton ("Milton"). Milton seeks dismissal of this Chapter 11 case for cause pursuant to 11 U.S.C. § 1112(b) and for the grounds set forth in 11 U.S.C. § 305 with respect to abstention. Alternatively, Milton seeks relief from stay for cause pursuant to 11 U.S.C. § 362(d)(1) for the purpose of pursuing an appeal to a Single Justice of the Massachusetts Appeals Court of an order of the Superior Court Department of the Trial Court, which order authorized Thomas J. Raftery ("Raftery" or the "Receiver"), in his capacity as receiver of Milestone Educational Institute, Inc. ("Milestone"), to commence the above Chapter 11 case. An opposition has been filed to the Motion. The Court conducted a hearing on May 3, 1994. Both sides to this dispute have submitted briefs. The facts are not in dispute.

## II. FACTS

The Court has reviewed the petition, schedules and statement of affairs, as well as the submissions of the parties and upon consideration of these documents and pleadings makes the following findings of fact. Milestone's primary business was the arrangement and sale of tour packages to student groups. Milton purports to be a creditor of

Milestone holding a secured claim based upon a promissory note dated June 1, 1992 in the face amount of 425,000 pounds sterling, although Raftery disputes this claim. By its terms, the note was payable on September 30, 1992. The statement of affairs prepared by Raftery indicates that Milton served as Treasurer of Milestone.

In June of 1993, Milestone ceased operations, having failed and refused to repay Milton, despite formal demand in March of 1993. Moreover, its president and 100% shareholder Christopher duMello Kenyon left the United States at about the same time. On June 9, 1993, Milton commenced an action in the Superior Court, Department of the Trial Court (the "Superior Court") against Milestone seeking damages for breach of the note, money had and delivered, and breach of implied contract. Milton also sought equitable relief in the form of an injunction prohibiting the transfer or encumbrance of Milestone's assets and the appointment of a common law receiver for the purpose of taking possession of and liquidating Milestone's assets. In conjunction with the filing of his complaint, Milton filed an Emergency Motion for the Appointment of a Common Law Receiver and an affidavit in which he testified to the foregoing facts.

On June 11, 1993, the Superior Court appointed Raftery "receiver of the estate, property, moneys, debts and effects of every kind and nature of or belonging to the defendant [Milestone]" and authorized him "to collect, get in, and take charge of all and singular thereof, and to hold the same subject to the further order of the court." The court further ordered that

the said defendant [Milestone], its officers, servants, agents and attorneys, and each of them, are hereby required and ordered to deliver to said receiver all the property, moneys, stock in trade and effects of every kind and nature, belonging to the said defendant in their hands, possession, or control, together with all books, deeds, documents, vouchers, and papers relating thereto, and the said defendant and its officers, servants, agents and attorneys, and each of them, are hereby restrained and enjoined from collecting any of the debts or accounts due to the said defendant and from using, spending, injuring,

conveying, transferring, selling, or in any manner disposing of or encumbering any of the effects or property aforesaid, except to deliver them into the hands of said receiver.

On or about October 20, 1993, Raftery moved the Superior Court for authority to file a Chapter 11 petition for the purpose of filing a liquidating plan. As grounds for the motion, Raftery indicated that under the Bankruptcy Code he might be able to avoid certain preferential transfers that would increase the amount of money available to distribute to Milestone's creditors. Milton opposed the motion, making the following two arguments: 1) the Superior Court erred in authorizing the filing of a bankruptcy petition because such a filing is beyond a receiver's common law authority; and 2) the commencement of a bankruptcy case would result in returning possession of Milestone's assets to the individuals from whom possession was wrested by the appointment of a receiver. On December 2, 1993, the Superior Court allowed Raftery's motion, without opinion, entering the following order:

ORDERED, that Thomas J. Raftery ("Mr. Raftery"), the duly appointed receiver of Milestone Educational Institute, Inc. ("Milestone") is authorized to file a voluntary petition under Chapter 11 of the United States Bankruptcy Code in Boston, Massachusetts (the "Chapter 11 Proceeding"); and it is further

ORDERED, that Mr. Raftery is authorized to take all actions he deems necessary in the Chapter 11 Proceeding to collect, receive, liquidate, and distribute Milestone's assets.

On December 3, 1993, Raftery filed a Chapter 11 petition as both the attorney for Milestone and the individual duly authorized to file the petition on behalf of Milestone. On January 20, 1994, Raftery filed schedules and a statement of affairs for Milestone, disclosing assets of approximately $346,000 and liabilities of approximately $8,540,000.

## III. ISSUES

The questions presented in this case are ones of first impression in this district. The overriding issue is whether this Court has

jurisdiction over a bankruptcy case filed by a receiver acting under authority granted by the state court on behalf of a corporate debtor. The answer to that question requires an examination of the statutory and case law of receiverships, as well as federal bankruptcy law on the subject. The Court has been unable to locate any direct precedent on·this issue. Moreover, the Court is hampered in its analysis by the absence of copies of the Articles of Incorporation, the by-laws of Milestone, and the complete record before the Superior Court.

## IV. ANALYSIS

### A. *Applicable State Law*

Sections 104 and 105 of the Business Corporation Law, Mass.Gen.Laws Ann. ch. 156B, §§ 1–116 (West 1992), provide guidance. Section 105 pertain to the appointment of receivers. Section 105 provides in relevant part:

> If a judgment has been recovered against a corporation and it has neglected for thirty days after demand made on execution to pay the amount due with the officer's fees, or to exhibit to the officer real or personal property belonging to it and subject to be taken on execution sufficient to satisfy the same and the execution has been returned unsatisfied, one or more receivers may be appointed with the powers and duties provided in, and subject to section one hundred and four.

*Id.* § 105.[1] Section 104, in turn, provides the following:

> If the existence of the corporation for other purposes is terminated (1) by dissolution under the provisions of section ninety-nine, one hundred, or one hundred and one, (2) by the expiration of the period for its duration limited by its articles of organization, or (3) in any other manner, the supreme judicial or superior court, upon application of a creditor or stockholder, shall have jurisdiction in equity to appoint one or more receivers to take charge of its estate and effects and to collect the debts and property due and belonging to it, with

power to prosecute and defend suits in its name or otherwise, to appoint agents under them and to do all other acts which might be done by such corporation, if in being, which may be necessary for the final settlement of its unfinished business. The powers of such receivers and the existence of the corporation may be continued as long as the court finds necessary for said purposes.

*Id.* § 104. *See also* Mass.Gen.Laws ch. 155, § 52; ch. 156, § 51. Moreover, the state court's "[g]eneral equity power to appoint receivers as distinguished from statutory authority is recognized. . . ." *New England Theatres v. Olympia Theatres,* 287 Mass. 485, 492, 192 N.E. 93 (1934), *citing Pond v. Framingham & Lowell R.R.,* 130 Mass 194 (1881), and *Falmouth Nat'l Bank v. Cape Cod Ship Canal Co.,* 166 Mass. 550, 568, 44 N.E. 617 (1896).

■ As a general rule, following the appointment of a receiver the corporation continues to exist and to be the real party in interest to litigation. The appointment does not dissolve the corporation or terminate its charter. *See* 65 Am.Jur.2d *Receivers* § 145 (1972). However, Massachusetts courts have recognized that the appointment of a receiver for an insolvent corporation can constitute a "virtual dissolution" of the corporation. *Folger v. Columbian Ins. Co.,* 999 Mass. 267, 276 (1868).

Courts differ on the effect of a receivership on corporate functions. 65 Am.Jur.2d Receivers § 146.

> On the one hand, it has been stated that except as to its authority over its property, a corporation, after the appointment of a receiver for it, retains its corporate functions. . . . On the other hand, it has been said that the appointment of a receiver operates to suspend the authority of the corporation and of its directors and officers over its property and effects and over its functions, such authority being reposed in the receiver, and in this respect, such a

1. In *New·England Theatres v. Olympia Theatres,* 287 Mass. 485, 192 N.E. 93 (1934), the court noted that " 'the consent of the defendant to the appointment of receivers, without setting up the defense that the complainants were not judgment creditors who had issued an execution which was returned unsatisfied, in whole or in part, amounted to a waiver of that defense.' " *Id.* at 492, 192 N.E. 93 (citations omitted).

receivership is equivalent to an injunction to restrain the officers and agents of the corporations from intermeddling with the property of the corporation in any way. The appointment operates to suspend the incidental powers of the board of directors necessary to carry on the corporate business. The receiver of a corporation, under this view, exercises the functions of the board of directors, managers and officers and directs not only its operation but also its policies on all lines. The authority of the receiver, as executive in control, is subject to the court alone. . . .

*Id.* (footnotes omitted, citations omitted).

■ When an order appointing a receiver enjoins the directors from performing their management functions, the corporation is for all practical purposes dissolved and the receiver must perform the functions necessary to discharge his duties that the shareholders were barred from performing. Thus, in *In re Allen–Foster–Willett Co.,* 227 Mass. 551, 116 N.E. 875 (1917), the court considered a situation in which the directors of a corporation bought at a discount nearly all the debts allowed by the receivers of their company. An intervenor argued that the receivers should not pay the directors on account of the purchased claims any amount in excess of the sums they paid for the claims. In considering the directors' fiduciary duties to the corporation, the court distinguished between a voluntary dissolution of a company and the winding up of its affairs under corporate management, and the winding up of the affairs of a corporation by receivers "with authority to prosecute and defend suits, and to do all other acts which might be done by the corporation if in being, and might be necessary for the final adjustment of its unfinished business." *Id.* at 557, 116 N.E. 875. The court noted that the company's directors, in language similar to that used by the Superior Court in the order quoted above, were not only commanded to turn over to the receivers all corporate property and effects, they were enjoined from interfering with, transferring or encumbering property of the corporation. *Id.* Under these circumstances, the court found that "this decree having ended all further corporate management the receivers alone were empowered to settle and close the company's affairs, to sell and convey its prop-

erty, and to distribute the proceeds as ordered by the court." *Id.*

In *Wellman v. North,* 256 Mass. 496, 500–01, 152 N.E. 886 (1926), the court described the powers of a receiver in a different but not inconsistent way. Noting that upon the appointment of a receiver property is in *custodia legis*—held by the court for the purpose of administration and disposition in accordance with the rights of the parties to the litigation—the court said "[t]he receiver is the representative of the court and of all parties interested in the litigation." *Id.* Consistent with this description, the order pursuant to which Raftery was appointed required him to file a detailed inventory of property with the court as well as a list of creditors, and it precluded him from disbursing funds to creditors without an order of the court.

Finally, as the Superior Court's June 11, 1993 order also reflected, "[a] receiver is entitled to the instruction of the court which appointed him." *Fauci v. Mulready,* 337 Mass. 532, 538, 150 N.E.2d 286 (1958). "Where his judgment is likely to be questioned by creditors, prudence will dictate recourse to the court for a decree authorizing particular action which will afford protection against later claim that the action was disadvantageous to the estate or beyond his authority." *Id.*

### B. Federal Law

■ Under federal law two principles stand out: 1) the authority to file a bankruptcy petition depends upon the corporate documents and state law, *Price v. Gurney,* 324 U.S. 100, 106–07, 65 S.Ct. 513, 516–17, 89 L.Ed. 776 (1945); *In re Giggles Restaurant, Inc.,* 103 B.R. 549, 553 (Bankr.D.N.J.1989); *In re Stavola/Manson Elec. Co., Inc.,* 94 B.R. 21, 24 (Bankr.D.Conn.1988); *In re Monterey Equities–Hillside,* 73 B.R. 749, 752 (Bankr. N.D.Cal.1987); *In re Crescent Beach Inn, Inc.,* 22 B.R. 155, 157 (Bankr.D.Me.); *In re Autumn Press, Inc.,* 20 B.R. 60, 61 (Bankr. D.Mass.1982); and 2) the appointment of receivers does not deprive the corporate directors of the power to file a bankruptcy petition, *In re Prudence,* 79 F.2d 77, 80 (2d Cir.1935). Indeed, in *Cash Currency Exch., Inc. v. Shine,* 762 F.2d 542 (7th Cir.1985), the court stated the following:

The district court held and we agree, that the exclusivity of an administrative receiver's title to all assets under state law is irrelevant to the determination whether a particular entity may file for bankruptcy relief.... [A] corporation may not be precluded by state law from availing itself of federal bankruptcy law. *International Shoe Co. v. Pinkus,* 278 U.S. 261, 73 L.Ed. 318, 49 S.Ct. 108 (1929). Title 11 suspends the operation of state insolvency laws except as to those classes of persons specifically excluded from being debtors under the Code.... [T]he receiver's exclusive title to the assets did not preclude the filing of the petitions.

762 F.2d at 552.

With respect to provisions of the Bankruptcy Code, section 101(11) defines "custodian" to include "[a] receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title." 11 U.S.C. § 101(11). Moreover, section 543(b)(1) *mandates* that a receiver deliver to the trustee any property of the debtor that he holds on the date that he acquires knowledge of the commencement of the bankruptcy case, although section 543(d)(1) modifies that rule if retention is in the best interest of creditors and the debtor is not insolvent.

### C. *Positions of the Parties*

#### 1. *Milton*

■ In support of his argument under section 1112(b), Milton correctly notes that under Massachusetts law, the authority to manage the business and affairs of a corporation, which would include the filing of a bankruptcy petition, is vested in the board of directors. *See* M.G.L. ch. 156B, § 47; M.G.L. ch. 156, § 21; and M.G.L. ch. 155, § 6. Citing *Wellman v. North, supra,* he maintains that the authority of a receiver does not match that of the board of directors.[2] However, *Wellman* involved the dissolution of a

partnership and does not stand for the proposition that a receiver cannot exercise authority normally vested in a board of directors, especially if his actions are sanctioned by the appointing court. Likewise, two other cases cited by Milton, *In re S & S Liquor Mart, Inc.,* 52 B.R. 226 (Bankr.D.R.I. 1985), and *In re Giggles Restaurant, Inc.,* 103 B.R. 549 (Bankr.D.N.J.1989), are inapposite as in both cases shareholders of the debtor corporations, not court appointed receivers, authorized or purported to authorize the filing of bankruptcy petitions.

Milton then argues that having commenced the bankruptcy petition Raftery, as Receiver, is now without authority to take any further action as to Milestone, and he and his firm are ineligible to serve as counsel to the Debtor, *see* 11 U.S.C. § 327(a).[3] According to Milton, Raftery, pursuant to 11 U.S.C. § 543, must turn over any property that he holds to another party, noting that that other party is unlikely to be the Debtor's self-exiled management.

With respect to his abstention argument, Milton emphasizes that efficient administration calls for dismissal to avoid the administrative expenses that will be incurred incident to the Chapter 11 proceeding—costs that in his view do not outweigh speculative preference recoveries.

Finally, Milton, as an alternative to dismissal, seeks relief from stay to pursue his appeal. Highlighting judicial economy, he states the following in his memorandum:

One proceeding before the Single Justice will determine the issue, rather than a series of determinations by this court, presumably an appeal to the U.S. District Court, and a subsequent appeal to the First Circuit Court of Appeals, all of which courts will be placed in the position of trying to decide how the Massachusetts Appeals Courts would handle this as yet unresolved issue.

---

**2.** He also cites Local Rule 15(d)(1) of the Local Rules of Bankruptcy, District of Massachusetts, which provides that "[a] petition by a corporation shall be signed or verified by an officer of agent of the corporation and shall be accompanied by a copy of the resolution of the Board of Directors or other evidence of the officer's or agent's authority to file the petition on behalf of the corporation."

**3.** If Raftery commenced the case acting as a director of the Debtor he would not be disinterested, *see* 11 U.S.C. § 101(14), (31)(B)(i). As a person in control of the Debtor prior to the filing, he would not be disinterested either. *Id.* § 101(31)(B)(iii). Accordingly, Raftery and his firm are ineligible to serve as counsel to the Debtor.

### 2. *Raftery*

■ The Receiver makes the following arguments: 1) Milton lacks standing to seek dismissal; 2) the state court may authorize a court appointed receiver to commence a bankruptcy proceeding, citing *In re Monterey Equities–Hillside, supra;* 3) section 543(d)(1) would allow the Court to permit Raftery to retain possession, or alternatively, a Chapter 11 Trustee could be appointed; 4) dismissal or abstention would only benefit Milton; and 5) relief from stay would be a *de facto* appeal of this Court's order denying dismissal or abstention.[4]

Raftery's first argument lacks merit as he seeks to disqualify Milton from pressing his motion on grounds that Milton is not a creditor. Raftery's objection to Milton's claim, which was filed on April 26, 1994, has not been decided by this Court. Accordingly, any ruling on Milton's standing would be premature.

The Receiver relies heavily on *Monterey Equities, supra.* In that case, the debtor was a California limited partnership that owned a single asset, an apartment complex in Texas. The court phrased the issue before it as "whether a receiver appointed by a state court to manage and control a limited partnership may commence a case under Chapter 11 . . . for the partnership without the consent of the general partner." 73 B.R. at 750. The court noted that even if the receiver was considered a general partner for purposes of bankruptcy rule 1004(a), he could not commence a voluntary case on behalf of the debtor. The court stated the following:

> Bankruptcy Rule 1004(a) states that a general partner may commence a voluntary petition if all the general partners consent. It does not preclude the filing of an involuntary petition by a state court-appointed receiver who has been expressly authorized to file a bankruptcy petition.

> \* \* \* \* \* \*

Further none of the cases cited by [the party seeking dismissal] hold that a state court cannot authorize a receiver to file a bankruptcy, although *In re Prudence Co.,* 79 F.2d 77 (2d Cir.1935) suggests in dictum that such a filing would be inappropriate because it would result in termination of the receivership. Rather, several of the cases cited by [movant] hold that appointment of a receiver will not terminate the authority of the Board of Directors of a corporation to avail itself of the remedies created by the Bankruptcy Code. *Central Mortgage & Trust, Inc. v. State of Texas,* 50 B.R. 1010 (S.D.Tex.1985); *In re S & S Liquor Mart, Inc.,* 52 B.R. 226 (Bankr. D.R.I.1985); *In re Prudence, supra; Cash Currency Exchange, Inc. v. Shine,* 762 F.2d 542 (7th Cir.1985).

73 B.R. at 752 (footnote omitted). This Court finds that upon close scrutiny *Monterey Equities* does not provide unequivocal support for the proposition that a receiver may commence a voluntary petition with the authority of the state court.

The receiver's third and fourth arguments are more persuasive but not dispositive. Section 543(d)(1) does authorize bankruptcy courts to excuse receivers from complying with the mandatory provisions of section 543(b), but only when the debtors are not insolvent, a situation inapplicable in the instant case where the Debtor is insolvent and appears to be incapable of reorganizing its affairs. Additionally, the appointment of either a Chapter 11 or Chapter 7 trustee would obviate the problems raised by Milton with respect to the exodus of the Debtor's president and sole shareholder. However, the Receiver's final argument is not persuasive because this Court under section 305 can and should suspend proceedings rather than dismiss the case thereby allowing Milton to proceed with his appeal while preserving any preference claims that the Debtor or a trustee might have against insiders.[5]

---

4. The Court authorized the Debtor to employ Nina Parker, Esq. on March 30, 1994. The Motion to Employ Attorney was signed by Raftery as Receiver of Milestone.

5. Section 305 provides in relevant part the following:

> (a) The court, after notice and a hearing, may dismiss a case under this title, or *may suspend all proceedings* in a case under this title, at any time if—
> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension. . . .

## D. *Remaining Issues*

The parties have not addressed two issues that may affect the outcome of this case. The first question is "who is the Debtor?" Stated another way, is the "Debtor", in substance, if not in form, really the receivership entity, as opposed to the corporation;[6] and whether the filing of an involuntary petition was the appropriate vehicle to bring Milestone before this Court.

With respect to the first issue, only a "person" may be a debtor under Chapter 11. 11 U.S.C. § 109(d). Persons include individuals, partnerships and corporation. A receiver appointed under M.G.L. ch. 156B, § 104 is charged with collecting the debtor's assets, settling its unfinished business and paying all debts due from the corporation if there are sufficient funds. *See also* M.G.L. ch. 156, § 51; ch. 155, § 52. If there are insufficient funds, the receiver

> shall distribute them ratably among the creditors who approve their debts in the manner directed by any decree of the court for that purpose. If there is a balance remaining after the payment of the debts, the receivers shall distribute and pay it to those who are justly entitled thereto as having been stockholders of the corporation, or their legal representatives.

M.G.L. ch. 156B, § 106. *See also* M.G.L. ch. 155, § 53. Both the language of section 104 and 106, as well as the order of the Superior Court, compel the conclusion that the existence of Milestone was terminated and the corporation was dissolved for all practical purposes but for the winding up of its affairs. Of course the Debtor's director, Christopher Kenyon, had he not left the country, could have commenced a bankruptcy case, thereby causing the suspension of the receivership, *Cash Currency Exch., Inc. v. Shine*, 762 F.2d at 552, but this Court questions whether the Receiver even acting with court authority can in effect revive the corporation as an entity eligible to be a debtor and file a Chapter 11 plan. In other words, the receivership, like a bankruptcy estate has different characteristics than a pre-receivership or pre-petition debtor. Receivers and trustees owe duties to courts and creditors that corporations do not. Moreover, courts have significant responsibilities with respect to the supervision and monitoring of receiverships and bankruptcy estates.

## E. *Discussion*

The Court's decision is governed by two inescapable consequences of the receivership: 1) the Receiver, while clothed with many of the powers and duties of a director of a corporation as a result of the June 11, 1993 order appointing him, is not a substitute director of Milestone and is not *the* corporation; and 2) the filing of the bankruptcy petition must have the effect of terminating the receivership. With respect to the first observation, the Court has been unable to find any authority for the proposition that a receiver can replace a director, although a receiver can perform some of a director's management duties. Accordingly, the only authority for the filing of the voluntary petition was that granted to the Receiver by the Superior Court. The Superior Court's exercise of its discretion to allow the Receiver to file a bankruptcy petition appears to be unprecedented.

With respect to the latter observation, given the control and supervision state courts and federal bankruptcy courts exercise over receiverships and bankruptcy cases, respectively, the two proceedings cannot coexist. The order of the Superior Court authorizing the Receiver to file a voluntary petition under Chapter 11 did not specifically indicate that the receivership would be terminated upon the filing of the bankruptcy petition. While this may have been implicit in the order, it is not inconceivable that without the explicit termination of the receivership the Receiver would have to take appropriate steps, subject to state court review, to terminate the receivership in the state court following the closing of the bankruptcy case. Federal preemption compels the conclusion that the receivership must yield in all aspects to avoid this consequence so that the assets of the Debtor corporation can be garnered

---

11 U.S.C. § 305(a)(1) (emphasis supplied).

**6.** The Court expresses no opinion on this issue at this time as neither Raftery nor Milton raised or addressed it. The Court reserves judgment on the issue.

and distributed with finality in accordance with the Bankruptcy Code.

The Court finds that allowance of Milton's motion for relief from stay for cause and concomitant suspension of all activity in this case pursuant to 11 U.S.C. § 305 will preserve the bankruptcy petition filing date for purposes of bringing preference actions, while permitting the Massachusetts Appeals Court to review the Superior Court's order and address novel and unsettled issues of receivership law that may include 1) whether a state court receiver can be empowered to commence a bankruptcy case for the corporation in the absence of consent by the directors; and 2) if so, whether a receiver can be empowered to act on behalf of a corporation and a debtor in a bankruptcy case in all respects so it is clear that the corporation not the receivership is the debtor. As the Receiver has reduced all of Milestone's assets to cash, the harm of delaying distribution to creditors is outweighed by the salutary effect of a ruling by the Appeals Court. If the Single Justice were to find that the Superior Court either abused its discretion or exceeded its authority in permitting the Receiver to file the petition, the Receiver could expeditiously complete his duties in the state court. If the Appeals Court rules the other way, and this Court finds that Milestone is an eligible debtor under all circumstances, the Debtor or a trustee may attempt to augment the bankruptcy estate by commencing appropriate adversary proceedings.

## V. CONCLUSION

In accordance with the foregoing, the Court hereby denies Milton's motion to dismiss under 11 U.S.C. §§ 1129 and 305(a) and allows Milton's motion for relief from the automatic stay. The Court *sua sponte* suspends this proceeding under section 305 until such time as the parties file with this Court the order and decision of the Appeals Court. If Milton for any reason fails to perfect or prosecute his appeal, Raftery shall immediately report either of these occurrences to this Court.