THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, Plaintiff-Appellant, v. RONALD P. SEMPETREAN, Defendant-Appellee.

First District (3rd Division)   No. 86—1245

Opinion filed June 8, 1988.

Thomas P. Luning and Kevin D. Evans, both of Chicago, for appellant.

Carmen V. Speranza and Michael A. Haugh, both of Chicago, for appellee.

JUSTICE RIZZI delivered the opinion of the court:
Plaintiff, The Prudential Insurance Company of America (Pruden-

tial), appeals from a dismissal by the trial court of counts I, II, and III of its "Verified Complaint for Injunctive and Other Relief" (Complaint) against defendant, Ronald P. Sempetrean (Sempetrean). On appeal, Prudential argues that the trial court erred in dismissing and not accepting as true the factual allegations of its complaint. Counts I, II and III of its complaint essentially alleged that: (1) the agreement entered into between Sempetrean and Prudential wherein Sempetrean agreed not to interfere with any of Prudential's insurance policies already in effect at Sempetrean's termination was enforceable; (2) Sempetrean owed Prudential a fiduciary duty not to prevent Prudential from accomplishing the purpose of Sempetrean's agency for Prudential; and (3) an implied covenant of good faith in Sempetrean's "Agency Agreement" with Prudential required Sempetrean not to deprive Prudential of the fruits of the contract. We affirm.

Prudential is a national insurance company which sells various life insurance products. Sempetrean worked for Prudential as a district agent from June 9, 1958, to March 1, 1985. As a district agent, Sempetrean sold life insurance, health insurance and annuities for Prudential. Compensation paid by Prudential to Sempetrean was governed by a written "Agency Agreement" prepared by Prudential and the terms of a collective bargaining agreement between Prudential and various unions. Neither the agreement with Prudential nor the collective bargaining agreement prohibited Sempetrean from engaging in any competitive activities with Prudential following the termination of Sempetrean's employment.

The crux of this action concerns life insurance policies that Sempetrean sold for Prudential. When Sempetrean sold Prudential life insurance policies, he received a commission of approximately 45% to 55% of the first-year premiums and a smaller commission in the years thereafter. Upon the termination of Sempetrean's employment with Prudential, he forfeited any right to receive further commissions on any and all policies he sold on behalf of Prudential.

The policies sold by Sempetrean were essentially unilateral contracts wherein the policyholders could cancel their policies or allow them to lapse at any time by failure to pay their annual premiums. Sempetrean's commission was governed by the payment of premiums. If the policyholders opted to cancel or allow their policies to lapse, Sempetrean received no commissions on those policies.

In 1984, disputes arose between Prudential and Sempetrean regarding the manner in which Sempetrean was servicing his policyholder clients. As a result of this dispute, Sempetrean ultimately resigned from Prudential on March 1, 1985. When Sempetrean resigned

from Prudential, Prudential prepared and required that he sign a termination agreement, which provided:

"In consideration of the waiver by the Prudential Insurance Company of America (Prudential) of its right to recover certain commissions paid to me ***, I do hereby agree not to directly, or indirectly through other persons, solicit or encourage termination or replacement of Prudential insurance policies which were placed in force or serviced by me during my tenure as a District Agent of Prudential. ***

* * *

Prudential agrees *** that it will not initiate any activities to terminate the licensure of Ronald Sempetrean in any trade or profession for which he is presently licensed."

Subsequent to his resignation from Prudential, Sempetrean became an insurance agent with one of Prudential's competitors. Sempetrean alleges that he was approached by clients and Prudential policyholders who desired to terminate their Prudential life insurance policies and replace them with new insurance policies. Prudential, on the other hand, alleges that Sempetrean openly solicited its policyholders and induced them into replacing their Prudential insurance policies with policies sold by Sempetrean's new company.

Pursuant to Illinois Insurance Rule 9.17, Prudential received notices of the replacement activities taking place with respect to its policies. Shortly thereafter, on December 11, 1985, Prudential filed a five-count complaint against Sempetrean in the circuit court of Cook County. Initially, Sempetrean moved to dismiss all five counts of Prudential's complaint, but later withdrew its motion only as to count V. On April 8, 1986, the court entered an order dismissing counts I, II, III and IV of Prudential's complaint. Prudential appealed this dismissal only as to counts I, II and III of its complaint.

■■ ■ In considering a motion to dismiss, all well-pleaded allegations are to be taken as true, and all reasonably favorable inferences to the nonmoving party which may be drawn from the facts should be considered. (*Payne v. Mill Race Inn* (1987), 152 Ill. App. 3d 269, 273, 504 N.E.2d 193, 196.) However, this rule does not extend to conclusions of law or fact which are unsupported by allegations of specific facts. Therefore, these bare allegations must be disregarded by the trial court in ruling on a motion to dismiss. (*Prudential Insurance Co. of America v. McCurry* (1986), 143 Ill. App. 3d 222, 225, 492 N.E.2d 1026, 1028.) To withstand a motion to dismiss, not only must a complaint be factually sufficient, it must also be legally sufficient and set forth a legally recognized claim as its avenue of recovery. Otherwise,

there can be no recourse at law for the injury alleged and the complaint must be dismissed. *Wait v. First Midwest Bank* (1986), 142 Ill. App. 3d 703, 707, 491 N.E.2d 795, 799-800.

Count I of Prudential's complaint alleges that the agreement entered into between Sempetrean and Prudential whereby Sempetrean agreed not to "directly or indirectly through other persons, solicit or encourage termination or replacement of Prudential insurance policies" is enforceable. Prudential urges this court not to construe this provision as a covenant not to compete, but rather as an attempt to "protect investments it made with the assistance of Sempetrean, for which Sempetrean was paid, during Sempetrean's employment by Prudential." Prudential concludes that it is not attempting to protect its interest in future business, but to protect its existing property and therefore a covenant not to compete is not involved. We find this argument unpersuasive.

The plain language of this agreement attempts to contractually restrict Sempetrean's right to practice his profession of selling insurance policies. Such agreements are in a sense restraints of trade and are carefully scrutinized by the courts to ensure that their intended effect is not the preclusion of competition *per se*. (*Instrumentalist Co. v. Band, Inc.* (1985), 134 Ill. App. 3d 884, 891, 480 N.E.2d 1273, 1279.) Thus, the question of enforceability of a restrictive covenant is a matter of law and depends upon the reasonableness of its terms. (*McRand, Inc. v. Van Beelen* (1985), 138 Ill. App. 3d 1045, 1051, 486 N.E.2d 1306, 1311.) In determining whether the covenant is reasonable, the basic test is whether the terms of the agreement are reasonable and necessary to protect a legitimate business interest of the employer, a determination which necessarily turns on the facts and circumstances of each case. (*A. B. Dick Co. v. American Pro-Tech* (1987), 159 Ill. App. 3d 786, 792, 514 N.E.2d 45, 49.) Moreover, the time limitation and geographical scope of the covenant must be reasonable. *Image Supplies, Inc. v. Hilmert* (1979), 71 Ill. App. 3d 710, 713, 390 N.E.2d 68, 70.

In the instant case, Prudential alleges that its policies are "unique" and are therefore entitled to the protection it sought to secure in its post-employment agreement with Sempetrean. Our review of the record establishes that Prudential offers no evidence to support its position that the policies involved herein are any more different or "unique" than the average policy issued by an insurance company. The factual allegation Prudential relies on to support its conclusion that its policies are "unique" does no more than indicate that the policies are of the kind which remain in effect year to year, provided the

policyholder pays the premiums and does not cancel or otherwise seek to discontinue the policy. In other words, if, at any time, the policyholders opted to terminate their policies, they could do so and Prudential would have no legal recourse. Prudential cannot, through this agreement with Sempetrean, attempt to protect at-will contractual relationships that it maintains with its policyholders. To say that Sempetrean is prohibited from selling policies to people who opt to terminate their policy with Prudential is an unfair restraint on trade and competition far beyond that necessary to protect Prudential's alleged interest. We are unable to accept Prudential's position that its policies are unique absent pertinent facts to support such a conclusion. The record evinces no such facts. Therefore, the trial court was correct in rejecting Prudential's conclusion that its policies were "unique" in nature.

■■ ■ Furthermore, this agreement has no limitations regarding time and geographics. Where the original agreement provides neither a time limitation nor a geographic boundary in which the activity sought to be prohibited should not take place, the restriction is too vague and ambiguous to be enforced and the court should not rewrite it. (*Akhter v. Shah* (1983), 119 Ill. App. 3d 131, 135, 456 N.E.2d 232, 235.) To give effect to such an open-ended agreement regarding the duration and geographic boundaries would impose an unreasonable and unbearable hardship upon Sempetrean and change the agreement entered into between Prudential and Sempetrean into a method of protecting Prudential against competition *ad infinitum* rather than a reasonable protection of Prudential's interest. (*L & R Insurance Agency, Inc. v. McPhail* (1968), 92 Ill. App. 2d 107, 113, 235 N.E.2d 153, 156.) As our supreme court stated, "To stake out unrealistic boundaries in time and space *** is to impose upon an employee the risk of proceeding at his peril, or the burden of expensive litigation to ascertain the scope of his obligation." (*House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 39, 225 N.E.2d 21, 24-25.) We therefore conclude that the trial court correctly found that the restraint imposed by this agreement was void and unenforceable as a matter of law.

Count II of Prudential's complaint alleges that Sempetrean owes Prudential a fiduciary duty not to prevent Prudential from accomplishing the purpose of Sempetrean's agency for Prudential. We disagree.

■■ As a general rule, the principles of good faith, loyalty and personal interest of an agent are not applicable following termination of an agency relationship. After such termination, the former agent may, absent an express covenant to the contrary, negotiate for his

own interest and may act adversely to his former principal. (*Prudential Insurance Co. of America v. McCurry* (1986), 143 Ill. App. 3d 222, 226, 492 N.E.2d 1026, 1028.) Thus, a former employee may not properly be enjoined from soliciting his former employer's customers whom he serviced during his employment. (*Revcor, Inc. v. Fame, Inc.* (1967), 85 Ill. App. 2d 350, 357, 228 N.E.2d 742, 746.) As the court stated in *Revcor*:

> "Our free economy is based upon competition. One who works for another cannot be compelled to erase from his mind all of the general skills, knowledge, acquaintances and over-all experience which he acquired during the course of his employment. \* \* \*
>
> If a salesman has agreed to a restrictive covenant in his employment contract, or if he has fraudulently and surreptitiously copied or removed lists of customers from a prior employer, or if the names of actual or potential customers are confidential \* \* \*, then, under proper circumstances, such salesman might be enjoined from soliciting business from the customers of his prior employer. Absent such circumstances, however, there can be no such prohibition." 85 Ill. App. 2d at 357, 228 N.E.2d at 746.

■ Here, the "Agency Agreement" entered into between Prudential and Sempetrean contained no provision which circumscribed Sempetrean's post-employment duties. The "Agency Agreement" that Prudential refers to is a standardized employment contract. Prudential, in drafting this agreement, did not have the foresight to include such a restrictive covenant and we will not imply one. Therefore, the trial court properly dismissed this count in finding that, as a matter of law, Sempetrean owed no fiduciary duty to Prudential following the termination of his agency relationship.

Count III of Prudential's complaint alleges that an implied covenant of good faith in Sempetrean's "Agency Agreement" with Prudential required Sempetrean not to deprive Prudential of the fruits of its contracts. Prudential argues that this implied covenant imposed a post-employment obligation upon Sempetrean to refrain from interfering with Prudential's rights to receive the fruits of its insurance contracts entered into while Sempetrean was in its employ. We disagree.

■ It is well settled that, absent a provision to the contrary, a covenant of good faith and fair dealing is implied in every contract as a matter of law. (*Dayan v. McDonald's Corp.* (1984), 125 Ill. App. 3d 972, 989-90, 466 N.E.2d 958, 971.) However, the principles of good faith and loyalty do not, unless expressly provided, apply after termi-

nation of the agency relationship. Moreover, an agent's post-employment competition with a former employer has never been held to be actionable under a theory of breach of implied covenant of good faith and fair dealing. (*Prudential Insurance Co. of America v. Van Matre* (1987), 158 Ill. App. 3d 298, 310, 511 N.E.2d 740, 747.) Thus, when the agency relationship is terminated, absent a restrictive covenant in the employment contract, a fraudulent act, or improper taking of a customer list, a former employee may compete with his former employer and solicit former customers without breaching any implied covenants of good faith. *Ellis & Marshall Associates, Inc. v. Marshall* (1973), 16 Ill. App. 3d 398, 404, 306 N.E.2d 712, 717.

■ In the instant case, Prudential does not allege the existence of an express covenant. Nor does Prudential allege that Sempetrean improperly or fraudulently gained possession of its customer list. Absent any of these special circumstances, Sempetrean's implied covenant of good faith with Prudential terminated when the agency relationship terminated. Therefore, the trial court properly dismissed count III, as well as counts I and II, for failure to state a cause of action upon which relief could be granted.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

WHITE, P.J., and McNAMARA, J., concur.