**In the Matter of GIGGLES RESTAU-
RANT, INC. A New Jersey
Corporation, Debtor.**

**Bankruptcy No. 88–06968.**

United States Bankruptcy Court,
D. New Jersey.

July 26, 1989.

Ravin, Greenberg & Zackin by Gary Marks, Roseland, N.J., for debtor.

Shapiro & Shapiro by Robert Shapiro, Hackensack, N.J., and David Marcus for Walter Epstein and Morris Feuerstein.

Kleinberg, Moroney, Masterson & Schachter by Stuart Brecher, Millburn, N.J., Glucksman & Weitzman by P. Glucksman, Morristown, N.J., for BKC Associates.

VINCENT J. COMMISA, Chief Judge.

This matter comes before the Court in the context of a motion for dismissal filed by BKC Associates. This motion for dismissal was filed as a result of a motion filed by the debtor which sought to extend the time within which to assume or reject a certain lease entered into with BKC Associates. The Court held hearings to determine whether the bankruptcy petition in the instant matter was a result of a validly adopted corporate resolution, and thus, is correctly within the jurisdiction of this Court. This Opinion shall constitute the Court's Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

The Debtor, Giggles Restaurant, Inc., is a New Jersey corporation which operates a restaurant and cocktail lounge, located at 25–105 Route 10 East, Morris Plains, New Jersey, a/k/a The Galleria 10 Mall. Although a Certificate of Incorporation was filed with the Secretary of State on November 1, 1984, the Statement of Financial Affairs filed by the Debtor indicates that the business did not commence operating until mid-April of 1986.

The Certificate of Incorporation states that the total authorized capital stock of the corporation would consist of 2000 shares of common stock. Additionally, the Certificate provided that the Board of Directors would consist of four people, to wit: Marc B. Kaye, Miriam L. Burg, Walter Epstein and Morris Feuerstein.

A Shareholder's Agreement, entered into on January 4, 1985, provides that the four people set forth in the preceding paragraph would also be the exclusive shareholders of the corporation. Each shareholder would hold 500 shares, or 25%, of the outstanding capital stock of the corporation.

Additionally, Article 3 of the Shareholders Agreement, entitled "Management" provides that: "The affairs of the corporation shall be conducted in accordance with the unanimous approval of the shareholders." Article 3 further states that "Each of the shareholders agrees to vote for the adoption of By–Laws of the corporation which provide that all action taken by the Board of Directors shall be pursuant to unanimous vote of the Board of Directors." Notwithstanding this language, no evidence has been offered to the Court that proves that By–Laws were ever adopted by the corporation.[1]

In a separate agreement executed on January 4, 1985, the corporation entered into a lease with BKC Associates. The lease was for a term of 30 years, and covered 7,000 square feet of space in a shopping center owned by BKC.[2] In addition, Article 6, subparagraph B of the Lease provides:

*Events of Default.* Any of the following events shall constitute a default.

If any event of Tenant's insolvency occurs, which Event may be any of the following: If Tenant shall be adjudicated bankrupt, insolvent or placed in receivership, or should proceedings be instituted by Tenant in bankruptcy reorganization arrangement, insolvency, receivership, trusteeship, agreement of composition, extension, or assignment for the benefit of creditors ...

... If a default may occur, Landlord may determine to cancel this Lease....

The aforementioned lease is the subject matter of a shareholder derivative action

---

1. Both parties to this motion assert that no by-laws were ever adopted by the shareholders. However, a document entitled "Unanimous Consent of Directors in Lieu of First Meeting of Directors," dated Nov. 2, 1984, purports to adopt by-laws as part of a corporate resolution. However, this consent is not signed; above the name of each director is the symbol "/s/", which normally indicates that the document to which the symbol is affixed is a conformed copy of a signed original. Although this symbol gives rise to the implication that a signed copy of the consent order does exist, and that, pursuant to this consent, by-laws were adopted by the corporation, the Court, without a signed copy before it on the record, must assume that no by-laws exist.

2. BKC, the moving party in this motion for dismissal, is a New Jersey partnership, whose managing partners are Marc Kaye and Miriam Burg.

brought by Epstein and Feuerstein in the Superior Court of New Jersey, Law Division, Morris County. In the lawsuit, Epstein and Feuerstein asserted that Giggles Restaurant suffered a loss of business as a result of the failure of BKC to perform certain of its maintenance obligations under the lease. The litigation, which has been consolidated with an action brought by BKC, also includes the issue of whether the Debtor is in breach of certain terms and conditions of the lease, thereby constituting a default which would enable BKC to cancel the lease and re-enter and remove the Debtor from the premises.

Subsequent to the filing of the state court actions, on or about September 7, 1988, the Managing Shareholders (i.e., Epstein and Feuerstein) issued a Notice of Special Meeting of Shareholders and Directors, to take place on September 19, 1988, at the offices of Shapiro & Shapiro, attorneys for the Managing Shareholders. The notice stated that the following matters would be presented at the meeting:

1. The sale of the business of Giggles Restaurant, Inc. for $1,020,000 to Michael Carousis and Constantine Vasilis;

2. The replacement of Walter Epstein and Morris Feuerstein as managers of the restaurant;

3. Such other business as any Director or Shareholder may wish to take up with the Shareholders and Directors and to have acted upon by them.

Trial Exhibit J–5.

The record reflects that of the four shareholders and directors of the Debtor, only Epstein and Feuerstein were present at the September 19 meeting. The meeting was also attended by Brad Burg, son of Miriam Burg, who held a proxy solely for purposes of a shareholder vote, executed by Miriam Burg. Brad Burg presented a proxy which clearly stated that it was a proxy for a shareholder only. In relevant part, the proxy form stated:

That I, Miriam L. Burg do hereby constitute and appoint Brad Burg Attorney and Agent for me and in my name, place and stead, to vote as my proxy at any

meeting of *shareholders* of Giggles Restaurant, Inc. . . . (emphasis added).

Marc Kaye, the fourth shareholder and director, did not attend the meeting but instead directed his attorneys to forward a letter advising that he consented only to the proposed sale of the restaurant.

The following actions occurred at the meeting. On the first item on the agenda, (the sale of the restaurant to Carousis and Vasilis for $1,020,000) Epstein, Feuerstein and Burg, through her proxy, each voted yes. On the second item of business, the replacement of Epstein and Feuerstein as managers of the restaurant, Epstein and Feuerstein voted, and Brad Burg abstained. Lastly, Epstein moved that the corporation file a reorganization petition pursuant to 11 U.S.C. § 1101 *et seq.* Feuerstein seconded this motion. After some discussion between the Managing Shareholders and Brad Burg, during which Burg indicated that he could take no position on this matter with respect to his shareholder proxy vote, a vote was taken. Only Epstein and Feuerstein voted yes. Subsequent to this vote, a corporate resolution dated October 21, 1988 and signed by Walter Epstein was issued which states that:

At a special meeting of the Directors of Giggles Restaurant, Inc. (the "Corporation") on September 19, 1988, the following resolution was adopted:

RESOLVED, that Giggles Restaurant, Inc. file a reorganization petition pursuant to 11 U.S.C. 1101 et seq. to protect the assets and business of Giggles Restaurant, Inc.

On October 24, 1988, the Debtor filed its petition for reorganization. Thereafter, on November 21, 1988, the Debtor filed a Motion to Extend the time within which to accept or reject its lease with BKC Associates. This is the same lease which is the subject of the state court actions between the debtor and BKC Associates. BKC, in response, filed a cross-motion for an Order Vacating the Automatic Stay, in order to proceed with its state court action. On January 30, 1989, a Consent Order was signed, extending the time within which the

Debtor must assume or reject the subject lease. Discovery was then conducted and as a result, on April 7, 1988, BKC filed a Motion for an Order of Dismissal, alleging that this Court should not assume jurisdiction over this proceeding because:

(i) the resolution authorizing the voluntary Chapter 11 petition lacked unanimous approval of the shareholders and directors and is therefore invalid and of no force and effect; and that

(ii) the Special Meeting held on September 19, 1988 was not attended by a quorum of the board of directors and thus, the resolution adopted at the meeting is invalid and of no force and effect; and that

(iii) BKC has standing to raise these issues pursuant to 11 U.S.C. § 1109(b).

In opposition to the Motion for Dismissal, Epstein and Feuerstein assert that:

(i) the resolution authorizing the filing of the Debtor's Chapter 11 petition was properly approved by unanimous consent of the shareholders; and that

(ii) BKC is barred by laches from pursuing its objection to authorization to file a bankruptcy petition; and that

(iii) BKC lacks standing to contest the authorization of the shareholders to file a petition.

The Court first directs its attention to BKC's contention that the resolution authorizing the filing of the Debtor's Chapter 11 petition was invalid, as the requisite unanimous approval of shareholders and directors was not obtained. The Court's inquiry here is twofold. First, it must determine whether unanimous or majority approval of either or both the shareholders and directors was necessary, and second, (if the first element is answered affirmatively) it must determine whether the requisite unanimous or majority approval was obtained.

As noted *supra*, the Shareholders Agreement of the Debtor provides that "[t]he

affairs of the corporation shall be conducted in accordance with the unanimous approval of the Shareholders."[3]

The Managing Directors contend that this provision of the Shareholders Agreement is tantamount to the type of transfer of management power from directors to shareholders contemplated in N.J.S.A. 14A:5–21(2), which provides in relevant part:

(2) A provision in the certificate of incorporation otherwise prohibited by law because it improperly restricts the board in its management of the business of the corporation, or improperly transfers or provides for the transfer to one or more persons named in the certificate of incorporation or to be selected from time to time by shareholders, all or any part of such management otherwise within the authority of the board, shall nevertheless be valid if all the incorporators have authorized such provision in the certificate of incorporation or the holders of record of all outstanding shares, whether or not having voting power, have authorized such provision in an amendment to the certificate of incorporation.

The Managing Directors urge the Court to accept their contention that the Court, with its equitable powers, must recognize that the shareholders intended to wrest all management powers away from the Board of Directors, even absent the necessary provision in the Certificate of Incorporation. The Court is not persuaded by this argument. Although it is acknowledged that the Bankruptcy Court is a court of equity, the Managing Shareholders are in actuality asking the Court to ignore the clear mandate of the statute, which strictly requires a transfer of power provision in the Certificate of Incorporation. Such an action goes far beyond the equitable powers of the Court.

In the absence of a provision to the contrary, New Jersey law provides that the business and affairs of a corporation shall

---

**3.** As also noted above, the Shareholders Agreement further states that each Shareholder "agrees to vote for the adoption of By–Laws ... which provide that all action taken by the Board of Directors shall be pursuant to unanimous vote of the Board of Directors." As noted above, the record reflects that these by-laws were never adopted.

be managed by its board. N.J.S.A. 14A:6-1. It is beyond cavil that the filing of a bankruptcy petition is an integral part of the "business and affairs" of a corporation. Additionally, there is ample support in case law for the proposition that, in the absence of restrictions, the power to file a voluntary petition in bankruptcy on behalf of a corporation rests with the Board of Directors. *In re Joseph Feld & Co.,* 38 F.Supp. 506, 507 (D.N.J.1941); *In the Matter of Great Northwest Development Co.,* 28 B.R. 141 (Bkrtcy.E.D.Mich.1983); *In re Acoustic Fiber Sound Systems,* 20 B.R. 769, 777 (Bkrtcy.S.D.Ind.1982); *In re American International Industries, Inc.,* 10 B.R. 695 (S.D.Fla.1981). Accordingly, it is clear that any corporate resolution which authorizes the filing of a voluntary bankruptcy petition must originate at a validly held meeting of directors and must be approved by the proper number of such directors.

■ In determining who has the authority to file a voluntary petition in bankruptcy, it is clear that this power to file is governed by state law. *Price v. Gurney,* 324 U.S. 100, 106–7, 65 S.Ct. 513, 516, 89 L.Ed. 776 (1945) ("In absence of federal incorporation, ... [the authority to file] finds its source in local laws.") *See also In re Stavola/Manson Electric Co., Inc.,* 94 B.R. 21, 24 (Bankr.D.Conn.1988); *In re Monterey Equities–Hillside,* 73 B.R. 749, 752 (Bankr.N.D.Cal.1987); *In re Hawaii Times Ltd.,* 53 B.R. 560, 561 (Bankr.D. Haw.1985); *In re Autumn Press, Inc.,* 20 B.R. 60 (Bankr.D.Mass.1982). Thus, as the record before the Court reflects that no by-laws exist for the subject corporation, the Court must turn to state law to ascertain the proper number of directors necessary to approve a voluntary filing in bankruptcy.

■ In New Jersey, the number required to constitute a quorum is governed by N.J.S.A. Sec. 14A:6–7(1), which states in pertinent part that:

A majority of the entire board, or of any committee thereof, shall constitute a quorum for the transaction of business, unless the certificate of incorporation or the by-laws shall provide that a greater or lesser number shall constitute a quorum, which in no case shall be less than the greater of two persons or one-third of the entire board ...

Thus, under New Jersey law, a simple majority is required to constitute a quorum. In concurrence with N.J.S.A. § 14A:6–7(1), *Black's Law Dictionary* (5th Ed.1979) defines "quorum" as:

A majority of the entire body; *e.g.,* a quorum of a state supreme court. The number of members who must be present in a deliberative body before business may be transacted.... Such a number of the members of a body as is competent to transact business in the absence of the other members. *The idea of a quorum is that, when that required number of persons goes into a session as a body, such as directors of a corporation, the votes of a majority thereof are sufficient for binding action. Benintendi v. Kenton Hotel,* 294 N.Y. 112, 60 N.Ed.2d 829, 831. When a committee, board of directors, meeting of shareholders, legislature or other body of persons cannot act unless a certain number at least of them are present, that number is called a "quorum." *In the absence of any law or rule fixing the quorum, it consists of a majority of those entitled to act.*

(Emphasis added). *See also Freidus v. Kaufman,* 35 N.J.Super. 601, 610, 114 A.2d 751 (1955) which states that the general rule in New Jersey, in the absence of a charter or by-law provision to the contrary, is that a majority of the directors of a corporation is necessary to constitute a quorum to transact business.

It is well-settled in New Jersey that a board of directors "may act only as a body lawfully assembled." *Feld, supra,* 38 F.Supp. at 507. In *Feld,* the president of a corporation filed a bankruptcy petition under authority of a corporate resolution that had been adopted at a meeting which was only attended by two of a three-member board, the third member never having been given notice. The District Court dismissed the petition, noting that "[t]he power to

**554**

manage the affairs of the corporation is vested in a board of directors; it is not conferred upon the members as individuals, and cannot be so exercised." *Id.* (citations omitted).

This proposition is also supported in *Freidus, supra,* wherein it was noted that:

In the absence of any regulation in the organic law, a majority of the body constitutes a quorum, and only when such a quorum is convened can a majority thereof do any act within the power of the body. *Donohue v. Campbell,* 98 N.J.L. 755 [121 A. 700] (E. & A.1923); *In re Webster Loose Leaf Filing Co.,* 240 F. 779 (D.C.N.J.1916); *Holcombe v. Trenton White City Co.,* 80 N.J.Eq. 122 [82 A. 618] (Ch.1912); *Wells v. Rahway White Rubber Co.,* 19 N.J.Eq. 402 (Ch. 1869); *Holcomb's Ex'rs v. President and Managers of N.H.D.B. Co.,* 9 N.J.Eq. 457 (Ch.1853). When there is less than the minimum number of directors as required by statute, the balance cannot act as a board except in regard to the ordinary internal affairs of the corporation which must be carried on from necessity. *Wright v. First National Bank,* 52 N.J.Eq. 392 [28 A. 719] (Ch.1894), reversed on other grounds *Kuser v. Wright,* 52 N.J.Eq. 825 [31 A. 397] (E. & A. 1894); 13 *Am.Jur.,* p. 918; 2 *Fletcher Cyc. Corp.* (1954 ed.), sections 419, 420, 421.

With regard to Giggles Restaurant, Inc., as the board consists of four persons, it would require attendance by at least three of those persons to constitute a quorum at a meeting of the board of directors.

A review of the record reveals that a quorum of the board was *not* present at the meeting at which the corporate resolution authorizing the filing of bankruptcy was adopted, nor did a majority of the board vote in favor of the resolution. As noted above, only two of the four directors of Giggles attended the meeting, *i.e.,* Walter Epstein and Morris Feuerstein. Although Brad Burg, son of Miriam Burg was present at the meeting, his sole purpose for attendance, as stated in the transcript of the meeting, was only to vote the shareholder's proxy for his mother Miriam Burg, on the issue of the sale of the business. (Tr. of Corporate Meeting of 9/19/88 at 8–9.) The transcript further reveals that only Epstein and Feuerstein voted in favor of the filing of bankruptcy. The record states that "[t]he motion (to file a reorganization petition pursuant to 11 U.S.C. 1101 *et seq.*) is passed by a vote of two in favor with Mr. Burg abstaining." (Tr. of Corporate Meeting of 9/19/88 at 21.) It is clear, then, that the meeting at which the corporate resolution authorizing the bankruptcy filing was neither attended by a quorum of the board nor voted on by a majority of the board; therefore, the resolution is invalid and is of no force and effect. Accordingly, the Court must deny jurisdiction over this matter. "The Court ... should not assume jurisdiction of a 'voluntary proceeding', which as in this case, is based on an invalid resolution which had its origin in an illegal meeting of directors." *Feld, supra,* 38 F.Supp. at 507.

LACHES

■ As an alternative to their argument that the corporate resolution was passed at a validly held directors' meeting, the Managing Shareholders contend that laches is another basis for denial of BKC's Motion to Dismiss. "Laches is an equitable concept based on the theory that a [party] who has slept on his rights for an unreasonably long time should not be permitted to bring suit where the delay has prejudiced the [other party]." *In re Eagson Corp.,* 1 B.R. 777 (Bkrtcy.E.D.Pa.1980). *See also In re Young,* 97 B.R. 679 (Bkrtcy.N.D.Ga.1988).

In order to determine whether BKC has allowed an "unreasonably long time" to elapse before filing its Motion to Dismiss, the Court must turn to 11 U.S.C. § 1112 which governs dismissals under Chapter 11. The statute provides, in pertinent part:

... (b) except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee, and after notice and a hearing, the court may ... dismiss a case under this chapter, ... for cause ...

The subsection provides no time limit for when a motion for dismissal must be

brought; thus, a court is committed to its discretion as to when a motion for dismissal is timely made. The legislative history to the Code Section provides that "[t]he court will be able to consider ... factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases." Notes of Committee on the Judiciary, Senate Report No. 95–989, U.S.Code Cong. & Admin.News 1978, p. 5787.

Thus, the Court must look to the individual facts and circumstances of this case to determine whether or not the doctrine of laches will be a grounds for denial of BKC's Motion to Dismiss. The Managing Shareholders assert that the six-month time period between the filing of the petition and the filing of the instant motion constitutes unreasonable delay which has prejudiced both the Debtor and its creditors. However, a review of the procedural history of the case reveals that, as a term of the Consent Order entered on January 30, 1989, both parties to this motion were given until March 15, 1989 to complete discovery on a matter which concerns many of the same facts and parties as those involved in the matter *sub judice*. That discovery deadline was then extended by the Court to April 26, 1989. BKC contends that it was the fruits of this discovery which form the basis for the instant Motion to Dismiss. The Court finds this reasonable, accordingly, finds that the doctrine of laches does not apply as a basis for denying dismissal.

STANDING

 The Managing Shareholders also allege that the within Motion to Dismiss should be denied as BKC, as landlord of the Debtor, lacks standing to contest the authorization of the directors or shareholders to file the petition. In support of this contention, the Managing Shareholders cite the case of *Royal Indemnity Co. v. American Bond & Mortgage Co.*, 289 U.S. 165, 53 S.Ct. 551, 77 L.Ed. 1100 (1933), and assert that this case stands for the proposition that only a shareholder or director may raise issues of authorization with regard to filing of a bankruptcy petition.

A reading of this case, however, reveals that the facts of the case make it inapposite to the matter at hand. In *Royal Indemnity*, a creditor of the bankrupt corporation attempted to attack the validity of the adjudication by using a statute which required shareholder approval for transfer of property of the corporation. The Court held that the creditor did not have standing in the case, based on the fact that the purpose of the statute relied upon was protection of the stockholders. This is clearly distinguishable from the instant case, wherein the issue is whether a resolution adopted at a meeting held in contravention of state law is valid.

BKC asserts that it has standing to bring the Motion under 11 U.S.C. § 1109(b), which states that: "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under [Chapter 11]." As noted in *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir.1985):

> ... The Code does not include a definition of party in interest; it is clear, however, that the term "party in interest" is not limited by the small list of examples in § 1109(b). *See 5 Collier on Bankruptcy* ¶ 1109.2 (L. King 15th ed. 1984). Section 102(3) of the Code, 11 U.S.C. § 102(3) (1982), part of the rules of construction of the Code, states that "including" is not a limiting term. And courts have not viewed the examples of parties in interest as being exhaustive. *See e.g., In re Cash Currency Exchange, Inc.*, 37 B.R. 617, 628 n. 10 (N.D.Ill.1984) (noting that § 1109(b) must be construed liberally; *In re Citizens Loan & Thrift Co.*, 7 B.R. 88, 89–91 (Bankr.N.D.Iowa 1980). Similarly, one commentator declared that "[s]ection 1109(b) must be construed broadly to permit parties affected by a chapter 11 proceeding to appear and be heard." *5 Collier on Bankruptcy* ¶ 1109(b), at 1109–22.1 to 1109–23; *see also Citizens Loan & Thrift Co.*, 7 B.R. at 90. Consequently, courts must determine on a case by case basis whether the

prospective party in interest has a sufficient stake in the proceeding so as to require representation. *See In re Penn–Dixie Industries, Inc.,* 9 B.R. 941, 943 n. 7 (Bankr.S.D.N.Y.1981).

Thus, the Court must determine whether BKC has a sufficient stake in the outcome of the proceeding which would entitle it to be heard. *See also In re Athos Steel and Aluminum, Inc.,* 69 B.R. 515 (Bkrtcy.E.D. Pa.1987). As noted in BKC's moving papers, by reason of the filing of the petition, the state court action against the Debtor has been stayed, and BKC's right to cancel the lease and re-rent the premises have been curtailed. Thus, BKC has a stake in an adjudication that the resolution authorizing bankruptcy was invalid and that the petition should be dismissed. Accordingly, the Court finds that BKC does have standing to bring the instant Motion to Dismiss.

In conclusion, the Court finds that it has no jurisdiction over the instant matter, as the corporate resolution which authorized the filing of the petition is invalid. Additionally, the Court finds that the Motion to Dismiss is not barred by laches, and that BKC, as a party in interest, has standing to bring the Motion. Accordingly, BKC's Motion will be granted and this case shall be dismissed.

Submit the appropriate Order within ten (10) days of the date hereof.