In re DEARBORN PROCESS
SERVICE, INC., Debtor.

**DEARBORN PROCESS SERVICE,
INC., Plaintiff,**

v.

**Linda J. STORNER, Individually and doing business as Dearborn Process Servers, Inc., an Illinois corporation a/k/a Dearborn Process Servers, Elizabeth Storner, Subhash Malhotra a/k/a Sam Malhotra, and Unknown Others, Defendants.**

Bankruptcy No. 92 B 23549.
Adv. No. 92 A 1401.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Jan. 22, 1993.

Gregory K. Stern, Chicago, IL, for plaintiff.

Thomas S. More, Chicago, IL, for defendants.

## PRELIMINARY INJUNCTION

JACK B. SCHMETTERER, Bankruptcy Judge.

This cause was heard on Motion of Plaintiff Dearborn Process Service, Inc. for preliminary injunction and other relief. Following an emergency hearing held on notice, this Court entered a Preliminary Injunction on October 27, 1992, *nunc pro tunc* the date of hearing and ruling October 23, 1992. Final hearing on the application for Preliminary Injunction was then set. Following completion of the full and final hearing thereon, the Court now makes and enters Findings of Fact, Conclusions of Law, and Preliminary Injunction *pendente lite:*

### FINDINGS OF FACT

1. On July 2, 1982, Dearborn Process Services, Inc. was incorporated under the law of the State of Illinois and assigned Illinois corporation number D–5278–584–7. This corporation was involuntarily dissolved on December 27, 1985 by the Illinois Secretary of State for failure to pay franchise taxes.

2. The shareholders of the dissolved corporation were Richard Walsh ("Walsh") and Linda J. Storner ("Storner").

3. From November 1986 through August 22, 1991, Walsh and Storner still operated under the name of "Dearborn Process Service, Inc.", and held the business out as a corporation under federal employer identification number 36–3186724.

4. On August 22, 1991, Walsh and Storner incorporated Dearborn Process Service, Inc., the Plaintiff ("Debtor") herein, under the laws of the State of Illinois, which was assigned Illinois corporation number D–5650–765–5. The Debtor obtained a new IRS tax number: 36–3840999.

5. During all the times that Debtor was incorporated, Walsh and Storner were and are the sole shareholders of the Debtor, each holding 50% of the common stock therein.

6. The Debtor was at all times mentioned and is engaged in the business of serving judicial process, making court filings, and obtaining document retrievals, primarily on behalf of many agencies and law firms. During 1991 and 1992, its principal place of business was located at 100 West Monroe Street, Suite 501, Chicago, Illinois. Storner managed the business day-to-day from that location. During

those years, the Debtor maintained and still maintains a Post Office Box Number A3693, which it has used in its business operations and published to third parties for such use.

7. Walsh is the duly authorized president and a director of the Debtor.

8. Until Storner's resignation, announced in open court on November 10, 1992, effective November 12, 1992, she was Secretary–Treasurer and a director of the Debtor. Until the latter date, Storner and Walsh were the only directors.

9. At all times when Debtor was incorporated until mid-October of 1992, Storner was the manager of the Debtor's business operations.

10. As directors, officers, and sole shareholders of the Debtor, a closely held corporation, Storner and Walsh each had until November 12, 1992 a confidential and fiduciary relationship with the Debtor.

11. The Debtor owned a corporate checking account, account number 486388, at the Northern Trust Company under federal employer identification number 36–3186724.

12. Prior to September 20, 1992, the Debtor had two business accounts in its name with Illinois Bell Telephone Company. The business telephone number of the first account was (312) 987–0900. The business telephone numbers of the second account were and are (312) 609–0600 and 609–0059. The latter account was established in August of 1988. Billing statements for the two business telephone accounts were in the name of and mailed to the Debtor prior to September 30, 1992.

13. On or about August 1, 1992, Storner and her daughter, the defendant Elizabeth Storner, developed and engaged in a plan to take away the business of Debtor for their own use and benefit. In furtherance of that plan, they seized records of the Debtor; contacted its customers; engaged in and conducted, under another but deceptively similar name ("Dearborn Process Servers"), the business of serving judicial process, court filings, and documents retrievals; engaged in the deceptive practice

of using the name of "Dearborn Process Servers, Inc.", headquartered at 100 West Monroe Street, Suite 501, Chicago, Illinois; and interfered with and diverted the business of Debtor to the defendant Dearborn Process Servers, Inc.

14. On August 20, 1992, Storner, as incorporator, prepared Articles of Incorporation for Dearborn Process Servers, Inc. Those Articles were filed by her with the Illinois Secretary of State on September 15, 1992.

15. Dearborn Process Servers, Inc., also known as Dearborn Process Servers ("Dearborn Process Servers, Inc."), is an Illinois corporation, whose stock is wholly owned and whose business is wholly controlled by Storner and her daughter, defendant Elizabeth Storner. It has its principal place of business at 100 West Monroe Street, Suite 501, Chicago, Illinois, in the office of the Debtor.

16. On or about September 16, 1992, the Storners prepared and submitted a federal Application for Employer Identification Number in the name of Dearborn Process Servers, Inc. The Application admitted that the business started on August 1, 1992.

17. Elizabeth Storner, Linda J. Storner, and Dearborn Process Servers, Inc. a/k/a Dearborn Process Servers (collectively, the "Defendants"), prior to entry of the emergency Preliminary Injunction entered herein on October 27, 1992, were engaged in and conducting business under the name of Dearborn Process Servers, Inc., headquartered at 100 West Monroe Street, Suite 501, Chicago, Illinois, the same office as that of the Debtor.

18. The business in which the Defendants were engaged prior to October 27, 1992 was the serving of judicial process, court filings, and document retrievals, the same business as that of the Debtor; and that business serviced many of the same customers as did the Debtor.

19. On August 31, 1992, acting as Secretary–Treasurer of the Debtor, Storner completed and submitted a federal Application for Employer Identification Number

Form SS–4, and was assigned a second federal employer identification number, # 36–3840999.

20. On September 1, 1992, Storner, on the Debtor's letterhead, faxed a letter to Ms. Ann Kenerson, Northern Trust Company, regarding account number 486388, and directing Northern Trust Company to change its records to reflect Debtor's new tax identification number as 36–3840999.

21. During September of 1992, Defendants removed some of the Debtor's books and records from the Debtor's principal place of business and had the locks on the doors changed.

22. On September 23, 1992, Storner requested of Illinois Bell a change in service, transferring Dearborn Process' telephone numbers (312) 609–0600 and 609–0059 to the name of Dearborn Process Servers, Inc., directing bills to be sent to Dearborn Process Servers, Inc., attn: Linda Storner, 100 West Monroe Street, Suite 501, Chicago, Illinois 60603, changing 411 information, and adding a third line to the account (312–609–0202).

23. On September 25, 1992, Storner transmitted a copy of Dearborn Process Servers, Inc.'s Articles of Incorporation to Illinois Bell.

24. The Illinois Bell change order requested by Storner on September 23, 1992 went through on September 30, 1992, changing the phone numbers into the name of Dearborn Process Servers, Inc., directing bills to Dearborn Process Servers, Inc., attn: Linda Storner, 100 West Monroe Street, Suite 501, Chicago, Illinois 60603, changing all 411 information, and adding a third line to the account (312–609–0202).

25. On October 19, 1992, Kathy Harper ("Harper"), an Illinois Bell business service representative, conducted a quality check by calling Debtor at (312) 609–0600 to verify the change order. Harper spoke to Linda J. Storner, who represented to Harper that she was a 50% owner of Dearborn Process Service, Inc.

26. Thereafter, on October 19, 1992, responsible people at Illinois Bell decided to transfer service to 20 North Clark Street, Suite 3500, Chicago, Illinois, because an Assumed Outstanding Charge Form ("AOC") had not been executed by Storner or Dearborn Process Servers, Inc. The change order was rescheduled for October 22, 1992.

27. On October 20, 1992, Harper called Storner to advise her that the phone numbers were being transferred to Debtor at 20 North Clark Street, Suite 3500, Chicago, Illinois, at which time Storner contested moving the phone numbers and agreed to sign an AOC. Thereafter Storner signed and mailed an AOC to Illinois Bell.

28. The Defendants, prior to entry of the Preliminary Injunction entered October 27, 1992, had begun business using the Debtor's phone numbers.

29. The Defendants contacted the Debtor's major customers, including but not limited to the State of Illinois Department of Children and Family Services ("DCFS"), in an effort to divert business that would otherwise have inured to the benefit of the Debtor.

30. DCFS is the Debtor's largest customer and, commencing in July 1992, began giving Debtor a substantial amount of business.

31. The Defendants developed and engaged in a scheme to defraud and divert the Debtor business and specifically the Debtor's business with DCFS, beginning in at least August 1992.

32. On August 31, 1992, DCFS confirmed to the Defendants an agreement for the Defendants to provide services to DCFS for the period of September 1, 1992 through September 30, 1992.

33. On September 30, 1992, DCFS confirmed to the Defendants an agreement for the Defendants to provide services to DCFS for the period of October 1, 1992 through October 31, 1992.

34. Defendants have succeeded in diverting DCFS business that would otherwise have inured to the benefit of the Debtor.

35. In November of 1991, Storner advised Walsh that she had retained the services of Subhash C. Malhotra, a certified

public accountant, to prepare the financial books and records of the corporation and to prepare any and all tax returns for the Debtor.

36. No 1987, 1988, 1989, or 1990 corporate income tax returns have been filed with the Internal Revenue Service or the Illinois Department of Revenue.

37. On August 24, 1992, Walsh sent Storner a letter demanding that she cure the problem areas in the Debtor's business operations, including organization, management, personnel, overhead, and taxes.

38. At an August 26, 1992 meeting between Walsh and Storner, Storner demanded that Walsh relinquish a portion of his ownership interest in the Debtor, so that she would have a 60% interest in the Debtor in exchange for her efforts in resolving the alleged problems with the Debtor's taxes, books, records, and other financial documentation. Upon Walsh's refusal of that demand, Storner demanded that the corporation be dissolved.

39. On August 26, 1992, Storner was personally served by Walsh with a notice of meeting of shareholders ("Shareholder Meeting"), scheduling the Shareholder Meeting for September 1, 1992.

40. On August 27, 1992, Storner contacted Walsh and requested that the Shareholder Meeting be continued to September 28, 1992. Walsh agreed to the continuance of same to September 28, 1992 at 2:00 p.m.

41. On September 4, 1992, Walsh met with Storner and her attorney Thomas J. Moore. Upon Storner's representation that she would be in England until September 22, 1992, Walsh agreed that the business operations should remain unaltered and that, on or before September 28, 1992, Storner would return all books, records, and other financial documentation that she had removed from the Debtor's premises.

42. On September 28, 1992, Walsh conducted the Shareholder Meeting at which time and place Walsh purported to remove Storner as a director, an officer, and as manager of the Debtor. However, only Walsh was present. Since Walsh owned only 50% of the Debtor's stock, this purported Shareholder Meeting held by Walsh alone therefore had less than a majority of the Debtor's outstanding shares represented. Accordingly, the meeting lacked a quorum to conduct business or elect directors and officers pursuant to § 7.60 of the Illinois Business Corporation Act, Chapter 32, Illinois Revised Statutes. Shortly afterwards, Walsh caused the Debtor to file for relief under Chapter 11 of the Bankruptcy Code. Storner did not consent to that filing. Subsequent to completion of the trial on the instant motion, through her counsel in open court on November 10, 1992, Storner submitted her resignation as officer and director of the Debtor, and the same was effective November 12, 1992.

43. The Debtor has been unable to prove by a preponderance of evidence the existence of an alleged agreement executed by Storner containing a covenant not to compete.

44. Until enjoined herein on an emergency basis, the Defendants engaged in a willful effort to disrupt and divert the Debtor's business. Unless the injunction is continued in effect *pendente lite*, defendants will resume that effort.

45. The Debtor will suffer immediate and irreparable injury unless a Preliminary Injunction, pursuant to Bankruptcy Rule 7065, continues in effect against the Defendants. That injury will consist of immediate and irreparable destruction of Debtor's business.

46. The Debtor has no adequate remedy at law to redress the threatened injuries.

47. There is a reasonable likelihood that the Debtor will prevail following trial on the merits.

48. Additional facts contained in the Conclusions of Law will stand as additional Findings of Fact. Conclusions of law contained in the Findings of Fact will stand as additional Conclusions of Law.

## CONCLUSIONS OF LAW

1. This matter is before the Court pursuant to 28 U.S.C. § 157, and is referred to here under Local District Court Rule 2.33. Subject matter jurisdiction lies under 28

U.S.C. § 1334. *See In re DeLorean Motor Co.*, 49 B.R. 900 (Bankr.E.D.Mich.1985) (finding jurisdiction over an action against the officers of a corporate debtor that alleged a breach of their state law fiduciary duties to the corporation). Furthermore, the Court has subject matter jurisdiction over all counts of the underlying Adversary complaint since the resolution of that matter clearly affects the reorganization process and the bankruptcy estate. *Home Insurance Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746 (7th Cir.1989); *In re Xonics, Inc.*, 813 F.2d 127 (7th Cir.1987).

■ ■ 2. This matter may only be considered to be a "core" proceeding under 28 U.S.C. § 157(b) if "it invokes a substantive right provided by Title 11 or it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Diamond Mortgage Corp. of Ill. v. Sugar*, 913 F.2d 1233, 1239 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 968, 112 L.Ed.2d 1054 (1991), *quoting Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir.1990). Plaintiff's motion for a preliminary injunction is based on Defendants' violation of state law. Furthermore, Counts I (seeking injunctive relief) and III (seeking an accounting) are entirely based on state law and could clearly exist outside of Debtor's bankruptcy case. Thus, the underlying Adversary complaint is not an entirely core matter.

■ Nevertheless, the motion is still a core proceeding under § 157(b)(2)(A) ("matters concerning the administration of the estate") because injunctive relief is necessary to prevent Defendants from depriving this Court of jurisdiction over the underlying Adversary case by rendering it moot through their actions. It is also core because such relief is needed to protect the reorganization process from illegal activity. *In re Apollo Molded Products, Inc.*, 83 B.R. 189, 191 (Bankr.D.Mass.1988) ("A complaint seeking an injunction to protect the reorganization process ... is a core proceeding"). *See also Elsinore Shore Assoc. v. Local 54, Hotel Employees & Restaurant Employees Int'l. Union*, 820 F.2d 62 (3rd Cir.1987), and *Int'l. Assoc. of Machinists and Aerospace Workers, AFL–CIO v. Eastern Air Lines*, 121 B.R. 428 (S.D.N.Y.1990) (both holding that motions for injunctive relief based on alleged violations of federal labor law were core proceedings). Therefore, the Court acts within its core jurisdiction when it exercises equitable power under 11 U.S.C. § 105(a) to protect the integrity of adversary and bankruptcy matters before that are properly before it.

## *Filing of Petition for Relief*

■ 3. Defendants have objected that Walsh was not authorized to file Debtor's bankruptcy petition. The authority to file a voluntary petition is an issue governed by state corporate governance law. *In re Giggles Restaurant, Inc.*, 103 B.R. 549, 553 (Bankr.D.N.J.1989), *citing Price v. Gurney*, 324 U.S. 100, 106–7, 65 S.Ct. 513, 516–17, 89 L.Ed. 776 (1945). Thus, Illinois law is applicable to determine whether Walsh had the authority to file a voluntary petition on behalf of Debtor.

■ 4. The Illinois Business Corporation Act provides that "the business and affairs of the corporation shall be managed by or under the direction of the board of directors." Ill.Rev.Stat. ch. 32, § 8.05(a). Thus, "the power to file a voluntary petition in bankruptcy on behalf of a corporation rests with the Board of Directors." *In re Giggles Restaurant*, 103 B.R. at 553 (and cases cited therein). The Business Corporation Act further provides that "the act of the majority of the directors present at a meeting at which a quorum is present shall be the act of the board of directors." Ill.Rev.Stat. ch. 32, § 8.15(c). Therefore, in the absence of corporate by-laws to the contrary, a corporation may only file a voluntary petition filed pursuant to a resolution passed at a board meeting by the majority of directors present.

■ 5. In this case, the petition was filed by the single director present at the meeting he called. Even if proper corporate governance had not been followed, that defect can be cured here by subsequent ratification or acquiescence by the

directors. *In re Wynco Distributors, Inc.,* 126 B.R. 131 (Bankr.D.Mass.1991); *In re Gas Reclamation, Inc.,* 51 B.R. 860 (Bankr.S.D.Tex.1985). In this case, Storner has resigned from her position as a director. This left only Walsh who is actively pursuing this bankruptcy. Therefore, the Debtor's current board of directors presently approves of and acquiesces in this bankruptcy filing, and if any defect once existed, it has been mooted by this development. *In re Wynco Distributors,* 126 B.R. at 133.

6. Storner has since counterclaimed in this case, asserting that the Debtor corporation is deadlocked and should be dissolved. The Court has deferred ruling on Storner's pending motion to dismiss the bankruptcy proceeding pending disposition of that counterclaim.

### *The Alleged Meeting of Shareholders and Directors Held September 28, 1992*

7. The first meeting of shareholders held by Richard Walsh on September 28, 1992 had less than a majority of the corporation's outstanding shares represented, and therefore lacked a quorum to conduct business, adopt bylaws, or elect directors. Ill.Rev.Stat. ch. 32, § 7.60. There was also no valid directors meeting held on September 28 because a quorum (majority) of the directors set forth in the Articles of Incorporation was not present. Ill.Rev.Stat. Ch. 32, § 8.15.

8. As of September 28, 1992, Storner sought to retain her position as Director and Secretary–Treasurer of Debtor, and therefore did not attend the meeting that day or consent to Mr. Walsh's purported discharge of her from those positions. Accordingly, The purported meeting of September 28 had no legal effect, and she remained in those positions until she resigned therefrom effective November 12, 1992.

### *Defendants' Violation of the Illinois Deceptive Trade Practice Act*

9. The Illinois Deceptive Trade Practices Act (the "Act") prohibits conduct likely to cause confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services. *Smith–Hurd* Illinois Revised Statutes, Chapter 121½, ¶ 312(2), (3), and (12) provides in relevant part,

**Acts constituting deceptive trade practice**

§ 2. A person engages in a deceptive trade practice when, in the course of business, vocation or occupation, he:

. . . . .

(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(3) causes likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another;

. . . . .

(12) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

In order to prevail in an action under this Act, a plaintiff need not prove competition between the parties or actual confusion or misunderstanding.

**Injunctive relief**

§ 3. A person likely to be damaged by a deceptive trade practice of another may be granted injunctive relief upon terms that the court considers reasonable. Proof of monetary damage, loss of profits or intent to deceive is not required. . . .

Costs or attorney's fees or both may be assessed against a defendant only if the court finds that he has willfully engaged in a deceptive trade practice.

Ill.Rev.Stat., ch. 121½ ¶ 312(2), (3), and (12) and ¶ 313.

■■■ The Act allows the courts to enjoin conduct likely to cause confusion of or misunderstanding as to the source or sponsorship of services. *People ex rel. Daley v. Datacom Systems Corp.,* 176 Ill.App.3d 697, 126 Ill.Dec. 212, 531 N.E.2d 839 (1st Dist.1988), *aff'd,* 146 Ill.2d 1, 165 Ill.Dec. 655, 585 N.E.2d 51 (1991). Deception in the marketing of services is prohibited, as well as deception in marketing products. *Id.*

10. The Act specifically provides that proof of actual confusion or misunderstanding is not necessary to find a violation of the Act because conduct that merely creates a likelihood of confusion or misunderstanding is defined as a deceptive trade practice. Ill.Rev.Stat. ch. 121½ ¶ 312; *Eshaghi v. Hanley Dawson Cadillac Co.,* 214 Ill.App.3d 995, 158 Ill.Dec. 647, 574 N.E.2d 760 (1st Dist.1991).

11. The conduct of the Defendants set forth in the Findings of Fact constituted one or more violations by them of the Act.

### Breach of Storner's Fiduciary Duties and Injunctive Relief

12. The issue of whether officers or directors of a corporation have breached their fiduciary duty to the corporation is controlled by the law of the state of incorporation. *Davis & Cox v. Summa Corp.,* 751 F.2d 1507 (9th Cir.1985); *In re Brown,* 4 B.R. 539 (Bankr.N.D.Ill.1980).

13. Corporate officers and directors, as fiduciaries, have duties of good faith, loyalty, and honesty, and, as such, cannot enhance their own personal interests at the expense of the corporation's interests. *Paulman v. Kritzer,* 38 Ill.2d 101, 230 N.E.2d 262 (1967); *Unichem Corp. v. Gurtler,* 148 Ill.App.3d 284, 101 Ill.Dec. 400, 498 N.E.2d 724 (1st Dist.1986). Thus, when a business opportunity presents itself to an officer or director of a corporation, and the opportunity is in the line of the business of that corporation, and especially if that opportunity was originally intended for the corporation, the law will not allow that officer or director to divert the opportunity from the corporation and embrace it as his or her own opportunity. *Paulman v. Kritzer, supra; Unichem Corp. v. Gurtler, supra.*

14. A former employee, who has fraudulently or surreptitiously removed lists of customers from the former employer, may be enjoined from soliciting business from the former employer's customers. *Prudential Insurance Company of America v. Sempeteran,* 171 Ill.App.3d 810, 121 Ill.Dec. 709, 525 N.E.2d 1016 (1st Dist.1988).

15. Shareholders in a closely held corporation owe a fiduciary duty to deal with the utmost good faith, fairly, honestly, and openly with their fellow stockholders. A close corporation is "one in which the stock is held in a few hands or in a few families, and wherein it is not at all, or only rarely, dealt in by buying or selling". *Galler v. Galler,* 32 Ill.2d 16, 27, 203 N.E.2d 577 (1964). Therefore, the Debtor is a close corporation. Resignation by a shareholder from the position of officer and director does not relieve that person of a fiduciary duty to the fellow shareholders because the resignation does not change that person's status as shareholder in the close corporation. *Hagshenas v. Gaylord,* 199 Ill.App.3d 60, 145 Ill.Dec. 546, 557 N.E.2d 316 (1990).

16. It is clear from the Findings that Storner breached her fiduciary duties owed to Debtor as director, officer, and shareholder, both by her conduct aimed at misdirecting Debtor's business and properties to the new businesses of Defendants, and by participating in violation by herself and other Defendants of the Illinois Deceptive Trade Practices Act.

17. In determining the extent to which it is appropriate to apply injunctive relief, it is important to observe the limits of such relief under Illinois law. While clientele may properly be called the customers of a particular business, no business has a proprietary interest in the customers themselves. *Southern Illinois Medical Business Associates v. Camillo,* 190 Ill.App.3d 664, 138 Ill.Dec. 4, 546 N.E.2d 1059 (5th Dist.1989). A corporation does have a protectible interest in its public sector customers. *Preferred Metal Systems, Inc. v. Guse,* 199 Ill.App.3d 710, 145 Ill.Dec. 736, 557 N.E.2d 506 (1st Dist.1990). In some businesses where customers have permanent or near permanent relationship with the business, there may be a "protectible business interest". But where the clients are not confidential, are served by a variety of competitors, and their names are

available in directories, there is no protectible interest in maintaining its client relationships. *Hamer Holding Group, Inc. v. Elmore,* 202 Ill.App.3d 994, 148 Ill.Dec. 310, 560 N.E.2d 907 (1st Dist.1990); *Williams & Montgomery, Ltd. v. Stellato,* 195 Ill.App.3d 544, 142 Ill.Dec. 359, 552 N.E.2d 1100 (1st Dist.1990). Plaintiff has not demonstrated a protectible business interest in its customers, nor are its customers confidential. Indeed, the Debtor's services are offered by many competitors, and Debtor and its competitors perform services for many governmental agencies and private law firms.

18. Under Illinois law, a former employer is not entitled to injunctive relief where it can only point to the taking of general information rather than specific trade secrets, particularly where the employer did not have the protection of a restrictive covenant. *AMP, Inc. v. Fleischhacker,* 823 F.2d 1199 (7th Cir., 1987). While under certain circumstances the identity of a business's customers may be a business interest protectible by restrictive covenant, that same knowledge is not a trade secret in the absence of a restrictive covenant. *Fleming Sale Co., Inc. v. Bailey,* 611 F.Supp. 507 (N.D.Ill.1985). As found above, Plaintiff did not prove that Storner signed a restrictive covenant.

19. In light of the foregoing facts found and law applicable, Plaintiff is entitled to injunctive relief tailored to eliminate the effects and benefits of prior egregious conduct and to prevent resumption of such conduct. However, such relief may not treat Debtor's customers as its property or permanently enjoin Defendants from engaging in a business in competition with Debtor. The Court is determined to accomplish the necessary prophylactic objectives and avoid an overly broad order by the injunction that follows. In it, apart from injunctive provisions requiring return of property and avoidance of misleading conduct, the Order limits injunctive relief to Debtor's customers during a short period prior to this suit, and extends the protection for only six months from the date of the emergency injunction entered earlier herein. This order does not attempt to deal with Plaintiff's requests for accounting and damages, those being matters to be determined upon final trial herein.

### Preliminary Injunction

Now, therefore, pursuant to Fed. R.Bankr.P. 7065, the Defendants Linda J. Storner, Elizabeth Storner, and Dearborn Process Servers, Inc., and their agents and attorneys, are preliminarily restrained and enjoined during the pendency of this action as follows:

A. From engaging in the business with any customers of serving judicial process, making court filings, and obtaining document retrieval under the name of "Dearborn Process Servers, Inc." or any other name using "Dearborn".

B. From interfering with the business operations of the Debtor;

C. From using the Debtor's business telephone numbers;

D. From soliciting or communicating until April 27, 1993 with those of Debtor's customers that were actually serviced by the Debtor during the period from July 1, 1992 to September 28, 1992 for the purpose of supplying or offering to supply any services specified in Part A of this Injunction.

E. From soliciting or communicating with the State of Illinois, DCFS, or any of its employees for purpose of supplying or offering to supply any services specified in Part A of this Injunction until April 27, 1993.

F. From contacting Illinois Bell Telephone Company or any of its employees for the purpose of utilizing or otherwise interfering with the Debtor's accounts therewith or with the Debtor's phone numbers.

G. From denying the Debtor's representatives full and unfettered access to 100 West Monroe Street, Suite 501, Chicago, Illinois for the purpose of removing Debtor's property, and from interfering with Debtor's removal of its books, records, equipment, and personal property located at 100 West Monroe Street, Suite 501, Chicago, Illinois.

H. From using or interfering with the Debtor's use of Post Office Box Number A3693, and Defendants shall immediately provide the Debtor with the combination of said post office box.

I. The Defendants are further mandatorily enjoined to turn over all or any of the following that they have not yet turned over to Plaintiff: Debtor's equipment, personal property, books, and records, including but not limited to checkbooks, disbursement ledgers, records of certain checking accounts at Northern Trust Bank and Continental Illinois National Bank, accounts receivables ledger, accounts payable ledger, cash disbursement sheets, purchases/accounts payable sheets, sales order entry book, job time cards, sales invoices, debit and credit memos, purchase orders, records of jobs in progress, DCFS records and letterhead, unfilled orders relating to customers referred to in parts D and E of this Injunction, sales contracts, agreements, customer lists, customer files, order files, corporate minute book, and any and all other records or documents used in connection with the business operations of the Debtor.

J. This Preliminary Injunction is effective immediately and supersedes the emergency Preliminary Injunction entered October 27, 1992. However, the Court reserves jurisdiction to consider any prior asserted violations of the said emergency injunction. This Preliminary Injunction shall be in full force and effect during pendency of this Adversary proceeding until further order of court.

K. There is no just reason for delay of appeal or enforcement hereof.